448 So.2d 162 (1984)
Mrs. Elizabeth Ann Daigrepont Burmaster, widow of Elvin E. BURMASTER, Jr., Individually and as Natural Tutrix of her Minor Children, Annelle Marie Burmaster, Velvet Ann Burmaster and Darrin Joseph Burmaster
v.
GRAVITY DRAINAGE DISTRICT NO. 2 OF the PARISH OF ST. CHARLES, St. Charles Parish Police Jury, ABC Insurance Company, Fromherz Engineers, Inc., DEF Insurance Company, Reise (Riess) Construction Company, and XYZ Insurance Company.
No. 83-CA-651.
Court of Appeal of Louisiana, Fifth Circuit.
March 13, 1984.
Robert J. David, Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, for plaintiffs-appellees.
*163 Steven F. Griffith, Sr., Steven F. Griffith, Sr., Ltd., Destrehan, for defendants-appellants.
Before CHEHARDY, CURRAULT and GAUDIN, JJ.
CURRAULT, Judge.
This appeal originates in the Twenty-Ninth Judicial District Court wherein the Honorable C. William Bradley rendered judgment in favor of plaintiffs and against defendant for the full sum of Seven Hundred Two Thousand, Five Hundred Seventy-One Dollars ($702,571) plus interest and costs. Defendant now appeals.
In 1961, the Gravity Drainage District No. 2 of the Parish of St. Charles contracted and had built a pumping station that would discharge the runoff of rain or water from other sources in the town of Norco from the East Drainage Canal into a small bayou which empties into Lake Pontchartrain. Safety railing was installed at this station shortly after its completion to provide protection in the area where employees and maintenance personnel would be working.
In April of 1977, the Board of Commissioners contacted Reagan Equipment Company to repair a clutch on the drive shaft that operated an engine at the Norco Pumping Station. On April 23, 1977, Elvin E. Burmaster and Eddie Joseph Ayo, employees of Reagan Equipment Company, were dispatched by Reagan to effect the necessary repairs at the Norco Pumping Station.
After arriving at the work site, Burmaster and Ayo determined that the clutch would have to be brought to Reagan's Equipment Shop to be "broken down" and repaired. This necessitated the removal of the engine shaft which was eleven feet, three inches long and weighed approximately two hundred and ninety-five pounds. While in the process of carrying it, Mr. Burmaster encountered an angle brace on a concrete walkway causing him to trip and fall into an open unguarded drainage pit where he drowned.
Suit was filed on behalf of the widow and heirs against several defendants. However, all defendants were dismissed with the exception of the Gravity Drainage District No. 2 of the Parish of St. Charles. After a trial on the merits, judgment was rendered June 7, 1983 in favor of plaintiffs and against defendant in the full sum of Seven Hundred Two Thousand, Five Hundred Seventy-One Dollars ($702,571), together with legal interest from date of judicial demand and all costs.
Appellant, Gravity Drainage District No. 2, although failing to appear for oral argument, asserts by brief the following specifications of error:
that (1) the trial court erred that the employee railed area was unreasonably hazardous to those working in the area; and that
(2) the trial court erred in failing to assess "victim fault" or contributory negligence under the facts of this case.
In finding that the employee railed area was unreasonably hazardous to those working in the area, the trial judge concluded in his written reasons:
"At the point of the accident, the guardrail bordering the pit and the bulkhead ended and at that point it was secured by a brace that extended downward from the guardrail across the concrete bulkhead for almost the total width of the bulkhead.
"The evidence preponderated that the bulkhead was used as a walkway; that the course of travel along the bulkhead to the truck was the most feasible if not the only path to take; that the brace across the bulkhead presented a hazard to one walking the bulkhead and presented an unreasonable risk of injury; that the absence of a guardrail bordering the pit and the bulkhead at the point where Burmaster stumbled, fell and toppled into the pit was hazardous and presented an unreasonable risk of injury; that the Drainage District was aware of this hazardous situation."
*164 When originally constructed, this pumping station did not have a guardrail along the bulkhead bordering the open drainage pit. Because the appellant recognized there was a danger to people working in that area, a guardrail was later added. However, in the area bordering the pit, the guardrail extended only 2 feet 4 inches from the edge of the pump shed leaving virtually the majority of the open pit unguarded. In addition, where the railing stopped, it had attached to it an angle brace which began about halfway up the 3 foot 6 inch high railing and extended downward 45 degrees directly across the bulkhead occupying some two and a half feet of the 3 foot wide walkway.
John Kern, accepted by the court as an expert in safety practices and regulations, testified that the placement of the brace across the bulkhead walkway presented an unreasonable risk of injury to anyone who would be working in that area because it presented an obstruction to safely working on the walkway or handling materials or equipment over it. Mr. Kern further testified that the absence of a guardrail on the bulkhead also presented an unreasonable risk of injury to people who would be traversing the bulkhead because of deep water in the open pit.
A.J. Scardino, accepted by the court as an expert in the field of safety engineering, concurred with Mr. Kern that the angle brace across the bulkhead walkway and the absence of a guardrail on that walkway both presented an unreasonable risk of injury to people working around them. Mr. Scardino testified the brace created a hidden "tripping hazard" for anyone occupied with performing a task other than just having to traverse the area. Further, he testified that had there been a guardrail along the bulkhead walkway, it probably would have prevented the fatality because it would have prevented Mr. Burmaster from falling into the pit.
It was also brought out at trial by both expert witnesses that each of these hazards independently violated certain guidelines of the Occupational Safety and Health Act (OSHA); namely, 29 CFR 1910.22(c) and 29 CFR 1910.22(b)(1). These regulations address the importance of protecting personnel from the hazards of open pits, tanks and ditches through the use of covers or guardrails and by providing aisles and passageways with no obstruction across them that would create a tripping hazard. Mr. Kern further testified that standards identical in nature to those of OSHA have been published by the American National Standard Institute, the Corps of Engineers and the National Safety Council Manual for Industrial Operations. While we recognize such standards and regulations may not be controlling, we do believe they merit much consideration as evidence of strong policies to afford protection to personnel working in hazardous areas such as in the instant case.
At the trial, the expert testimony of Messrs. Kern and Scardino stood unassailed. Appellant offered no experts to counter the testimony that the railed area was unreasonably hazardous to those working in that area. There was not so much as the proverbial scintilla of evidence presented which would contradict the direct proof on these points.
On appeal, appellant has failed to demonstrate to this court's satisfaction how the trial judge could possibly be considered "clearly wrong" in his finding that the railed area was unreasonably hazardous to those working there. The record amply supports these findings. Accordingly, we believe the trial judge was correct as to the unreasonable risk of injury presented by the railed work area.
Appellant attempted to exonerate itself from liability by alleging "victim fault." The trial judge, however, found such allegation unsubstantiated and ruled Mr. Burmaster, decedent, not negligent. As the trial court found liability based upon this area presenting an unreasonable risk of injury to those working there, this liability is in the nature of that imposed under *165 LSA-C.C. Article 2317.[1] Accordingly, we shall likewise treat the trial judge's finding of no negligence on the part of Mr. Burmaster as a finding that his actions did not constitute victim fault.
Victim fault is tantamount to assumption of the risk. Gordon v. City of New Orleans, 430 So.2d 234 (La.App. 4th Cir.1983). Assumption of the risk is a subjective determination involving first the victim's knowledge and appreciation of the danger and, secondly, a voluntary encountering of it. Gordon, supra; Carpenter v. State Farm Fire and Casualty Company, 411 So.2d 1206 (La.App. 4th Cir.1982).
Appellant attempts to argue that the corridor used by Mr. Burmaster was never designed to be used in a manner in which he used it. Appellant asserts Mr. Burmaster deliberately and intentionally chose a pathway that would cause him to step over an open and obvious brace while shouldering a heavy piece of equipment and attempting to negotiate a narrow corridor never intended for such use. Appellant wants this court to believe that Mr. Burmaster contributed to his own demise by going into an area that was unguarded and using a corridor that was not designed to be used as a corridor for the transportation of equipment or machinery.
Mr. Kern expressly stated that the decedent and his helper could not have removed the shaft through the pump shed. It was his expert opinion that, given the size of the shaft and dimensions of the pump shed, it would have been physically impossible to have worked the shaft around the engine along the side of the building and through the angled doors. Mr. Scardino corroborated Mr. Kern's testimony by stating that from a logical material handling standpoint, the path Mr. Burmaster chose was the simplest. Mr. Scardino went further to say that Mr. Burmaster did nothing wrong. After a review of the evidence, we can come to no other conclusion than to agree with these expert witnesses.
Mr. Burmaster was faced with getting a job done at a job site that presented an unreasonable risk of injury to himself and others working there. In order to complete the job, it was determined the shaft would have to be removed and brought to the shop. After disconnecting the shafts, Burmaster and Ayo were attempting to move it through the only available egress.
Mr. Ayo, the only eyewitness to testify, was instrumental in clarifying the incident. He explained that neither he nor Burmaster had any difficulty with the weight of the shaft and that both were in control and had no problem in handling or carrying it. Ayo stated that they were in no hurry and were taking their time.
With Burmaster in the lead and on the bulkhead walkway, Ayo testified they were heading towards their truck when suddenly he felt a jar and Burmaster went down on his knees, then fell face forward into the walkway. Ayo explained Burmaster's abrupt fall as a trip as if someone had stepped on his foot. Before being thrown into the water himself by the shaft, Ayo testified he saw Burmaster rolling off the side of the walkway into the pit. Ayo further stated that once Burmaster hit the walkway, it appeared he was knocked unconscious.
Appellant has not pointed to any actions taken by the victim which would indicate to this court that such actions constituted victim fault. The victim's actions, as shown by the record, were reasonable and in no way demonstrate that they were in fact a cause of the incident. It is evident that this victim had no knowledge or appreciation of the danger he faced in removing the engine shaft. The trial judge did not err in reaching his conclusions concerning the victim's actions.
Accordingly, for the above stated reasons, the judgment appealed from is hereby *166 affirmed with all costs assessed to appellant.
AFFIRMED.
NOTES
[1] LSA-C.C. Article 2317: We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications.