KLIEBERT, Chief Judge.
This litigation by Mrs. Burmaster, individually and as natural tutrix of her minor children (hereafter “Burmasters”), plaintiff-appellee, arose from the death of Mr. Burmaster who was killed on April 23, 1977, when he fell from a three foot wide concrete bulkhead into a water-filled drainage pit and was drowned. The bulkhead and pit were located on premises owned and operated by the St. Charles Parish Gravity Drainage District No. 2. The Bur-masters initially named several entities as defendants, including the Drainage District, the Parish of St. Charles, and the Parish Police Jury (the “Council”), as well as various insurance companies (hereafter collectively defendants-appellants).
In a brief responding to the Drainage District’s motion for summary judgment, the Burmasters contended the Parish and the Council were liable for the plaintiffs’ damages, based on, among other things, the following alleged facts:
1. The Parish provided .80% to 90% of the maintenance services, including personnel and equipment, needed by the Drainage District.
2. The Parish organized the Drainage District, appointed its members and solicited and provided funds for the Drainage District.
3. The Parish and the Drainage District were “inseparable,” and the organizational “lines” between them were transcended by the control and operational participation of the Parish.
In defense, the Parish and the Council sought a summary judgment of dismissal, arguing that the above enumerated facts as well as others in the record did not warrant holding the Parish liable for the torts of a distinct political subdivision, the Drainage District.
On June 16, 1982, the Parish’s motion for summary dismissal was granted, and both the Parish and the Council were adjudged not liable for the Burmasters’ loss. In its judgment of dismissal, which was not appealed, the trial court specifically held that neither the Parish nor its Council were responsible for the torts of the separate political subdivision, the Drainage District. At a subsequent trial of the Burmasters’ claims, the Drainage District, by judgment *1047 dated June 3, 1983, was found solely liable for Mr. Burmaster’s death, on the ground that the Drainage District’s facilities “presented an unreasonable risk of injury.” Therefore, the trial judge awarded judgment against the Drainage District in favor of the Burmasters. This judgment was appealed by the Drainage District and affirmed. See Burmaster v. Gravity Drainage District II, 448 So.2d 162 (5th Cir.1984).
On December 23, 1984 the Burmasters filed against the Drainage District and the Parish a “Motion to Examine Judgment Debtor and Successor in Title” wherein it was alleged that the governing body of St. Charles Parish had assumed complete control of the Drainage District and had thus placed itself in the position of the judgment debtor. This was followed, on June 6, 1986, by a “Motion/Petition to Make Judgment Executory Against Successor in Title” wherein the plaintiffs made defendants the St. Charles Parish Council and made the allegation that the Parish had taken over the activities and assets of the Drainage District and should thus be ordered to pay the judgment against it. Following the filing of oppositions based on the form of the pleadings by the Parish to the foregoing motions/petitions, the plaintiffs then filed first and second supplemental petitions to make the judgment executory on September 8th and October 2nd, 1986, respectively. Subsequent to this, the Parish filed against the Burmasters’ pleadings, exceptions of no cause and no right of action (predicated on sovereign immunity of the Parish), res judicata (based on the June 16, 1982 judgment of dismissal above referred to), an exception of prescription, and answers. The Parish also filed a motion for summary judgment.
Following a November 1991 hearing the trial court denied the Parish’s motion for summary judgment, referred the Parish’s peremptory exceptions of no right or cause of action and prescription to the merits and granted the plaintiffs’ oral motion to amend the pleadings. The Parish applied for writs to this Court. See Docket No. 90-C-821. This Court affirmed the trial court’s ruling on the motion for summary judgment and its ruling on the referral of the peremptory exception to the merits and pointed out that an order to amend the pleadings could only be filed by the filing of a written pleading. Accordingly, the case was remanded to the trial court.
On February 20, 1991 the Burmasters filed their third supplemental and amending petition wherein it was alleged that by the enactment of Parish Council Ordinance 83-3-11 a merger took place whereby the Drainage District was divested of its assets and liabilities, including the judgment in petitioners’ favor, and as a consequence petitioners were entitled to have their judgment recognized as an obligation of the Parish. The Burmasters also filed, on the same day, a written motion and order authorizing the filing of the petition in order to assert a claim for a declaratory judgment.
Following a hearing on the merits, the trial court by judgment dated December 2, 1991 granted plaintiffs’ request for a declaratory judgment holding that “St. Charles Parish is liable for the Burmaster judgment rendered against Gravity Drainage District No. 2” on June 7, 1983. The judgment was grounded in the holding that although there was no formal merger through the enactment of Ordinance 83-3-11, a copy of which is annexed as Appendix No. 1, and the actions taken by the Council, there was a de facto merger of the Drainage District with the Parish, hence, St. Charles Parish assumed the liabilities of Gravity Drainage District No. 2.
The Parish appeals the judgment arguing error of the trial court’s ruling on the following questions:
“A. Whether the lower court’s finding of merger has any basis in fact or law.
B. Whether the lower court erroneously disregarded the well established rule that management of a corporate entity does not render the manager liable for the entity’s pre-management breach of its obligations.
*1048 C. Whether the lower court erred in denying the exception of res judica-ta.
D. Whether the lower court erroneously disregarded the Parish’s sovereign immunity.
E. Whether the lower court’s judgment is contrary to law, because even if the Parish were “merged” with the Drainage District, the Parish may only pay the judgment by a special assessment levied against the constituents of the Drainage District.
F. Whether the lower court erroneously denied the exception of prescription.”
For the reasons hereinafter stated we vacate the trial court order and dismiss the action against the Parish of St. Charles.
We consider first the appellants’ argument on the Exception of Res Judicata, i.e., the judgment of June 16, 1982 originally dismissing the Parish from the litigation barring the “current effort to render the Parish responsible for the Drainage District’s torts.” Such is not the case. Apparently recognizing that (1) the original judgment of the lower court of June 16, 1982 which dismissed the Parish from the suit is final and (2) any tort action as to the Parish is barred by res judicata, the Burmasters have based all of the assertions against the Parish since the finality of the June 16, 1982 judgment against the Drainage District on the premise that the Parish had assumed and become obligated for, under whatever theory, the debts of the Drainage District, including the judgment in favor of the plaintiffs. The matters done and things attributable to the Parish which it is asserted result in this assumption and obligation have, for the most part, all taken place subsequent to the judgment in the tort action. The Exception of Res Judicata as defined by the applicable statute [R.S. 13:4231 (1984) ] simply does not apply. The “thing demanded” originally was recovery in tort; “the thing” demanded now is that one (the Parish) be decreed to have assumed the obligations of the other (the Drainage District) and thus indebted to the Burmasters for the original judgment.
By characterizing the action as now asserted as being one no longer sounding in tort, the Burmasters eliminated the defense of Res Judicata only to be confronted with the argument that their demands are barred by sovereign immunity. Specifically, defendant urges in this regard the limitation on the waiver of immunity provided by the Louisiana Constitution of 1974, Article 12, Section 10, which states in part:
“§ 10. Suits against the State
Section 10. (A) No Immunity in Contract and Tort. Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to ‘person or property.” (Emphasis Supplied)
The provision makes it clear that immunity from suit is waived by a parish only in suits “in contract or for injury to person or property” and this action (as it now stands) appears to be neither. Indeed, counsel for appellees admit in brief in this Court that their proceeding “does not allege a tort” and obviously there is no claim whatever that any “contract” with the Parish gives rise to their claim against it.
The trial judge resolved the issue in a dual fashion. First he concluded that the plaintiffs’ demands centered on an interest in a money judgment which manifests a property right and “since the Parish is not immune from suits involving injury to property, it is not immune from this suit which involves injury to a property right.” This analysis broadens the limited waiver of sovereign immunity found in Section 10 into a waiver of all property interest related immunities, simply because all suits involving property rights would be construed as suits involving “injury to ... property.” This is not how the limited waiver of immunity is to be construed.
Suits involving “injury to property” are exactly that and they do not encompass suits to determine property rights. Illustrative of this is the case of Two O’Clock Bayou Land Company, Inc. v. State of Louisiana, 415 So.2d 990 (3rd Cir.1982), where the plaintiff unsuccessfully sought a declaratory judgment that it owned the bed of a bayou within certain sections of land *1049 patented by the state to another entity. The court dismissed this request for a declaration of rights, not on the basis of the substantive law underlying the claim, but because sovereign immunity barred this type of suit involving a property right. In the court’s words:
“The state contends that the plaintiffs’ suit is not based in contract or for injury to property within the meaning of Article 12, Section 10, but is rather a suit for determination of the ownership of land. Consequently, it falls in the category of “other suits” under Section 10(B) of the above provision of our Constitution and the plaintiff must obtain the authorization of the legislature before it can proceed. We agree.”
415 So.2d at 992 (emphasis added). Likewise, the instant action, which, according to the court below, involves “a property right” and seeks a declaration of those rights, falls squarely in the category of an “other suit” under Section 10(B).[1] Thus, the plaintiff’s claim here is barred by the same unwaived sovereign immunity that barred the declaratory judgment plaintiff in Two O’Clock Bayou Land Company, Inc. v. State, supra.
Secondly, with respect to the sovereign immunity issue, the trial judge concluded that the Declaratory Judgment Act is one “which clearly anticipates actions against political subdivisions of the state” such that its enactment “waived political subdivisions’ immunity from declaratory actions.” This reasoning is specious. Were it to be accepted any claim could be brought against the state or one of its subdivisions and sovereign immunity would be meaningless, provided the procedural device of a declaratory action was employed by the party seeking relief. No authority has been cited for this approach and it would appear that there is none.
Beyond the foregoing and because of the language used in the writ application, wherein we stated that “we see genuine issue of material fact involved, among which, most importantly, is whether the intent of the Parish, dissolving the Board of the Gravity Drainage District, in effect, was an attempt to escape possible liability for the judgment rendered previously against the Board,” we examine the proceedings held pursuant thereto.
The record consists of over twenty offerings by the plaintiffs, including financial records, ordinances, minutes, depositions, and the like. The defendant introduced over thirty pieces of documentary evidence in the form of minutes, ordinances, land sale, lease agreement, special elections, tax levies, and the like. The trial court, following submission of the matter, rendered written reasons finding that the plaintiffs’ reliance on Article 6, Section 16(B) of the Louisiana Constitution and their theory of successor liability could not be sustained as he found that there was no merger between the Parish and Drainage District, the prerequisite of Article 6, Section 16(A) not having been met. He did find, however, that a de facto merger had taken place and, without citation of authority, held that the principle of successor liability was as applicable to a governmental subdivision as to a private entity. We agree with the first finding; we disagree with the second.
Significant and central to the plaintiffs’ position is the enactment of Ordinance 83-3-11 which transferred the functions of former Gravity Drainage District Commission to the Parish Council. The fact of the matter is, however, and in spite of parole opinions which might appear to be to the contrary, the Council has never done anything which can be construed as subjecting, either implicitly or otherwise, the Parish fisc to the payment of the subject judgment.
The sum of what has happened, as appears from the record as a whole, is simply that the Council now performs the functions of the Commissioner of the Drainage *1050 District. There has been no fraud; there has been no transfer of assets, and the Drainage District continues to own its own property. The Parish was absolved from liability for the death of Mr. Burmaster years ago. On two occasions, November 8, 1988 and May 5,1990, the matter of paying the judgment was submitted to the Drainage District voters and rejected. While we may empathize with the plaintiffs’ feelings of frustration at being unable to execute on their judgment, it is clear to us that the Parish was and is under no obligation, legally or otherwise, to assume payment for a matter for which it was deemed not liable. The subsequent operations cannot be said to have either expressly, or impliedly, or otherwise rendered it responsible for that which it has continually and consistently denied any obligation.
The judgment of the lower court is therefore vacated and the plaintiffs’ suit dismissed at their cost.
JUDGMENT VACATED; SUIT DISMISSED.
APPENDIX NO. 1
SUMMARY NO. 1384
INTRODUCED BY:
COUNCILMAN RODRIGUE
DISTRICT VI
ORDINANCE NO. 83-3-11
An ordinance transferring the functions of the Board of Commissioners of Gravity Drainage District No. 2 of St. Charles Parish, State of Louisiana, to the St. Charles Parish Council, abolishing the said Board of Commissioners and providing for other matters in connection therewith.
THE ST. CHARLES PARISH COUNCIL HEREBY ORDAINS:
WHEREAS, the governing authority of the Parish of St. Charles, State of Louisiana, created Gravity Drainage District No. 2 of St. Charles Parish, State of Louisiana, on June 23, 1959, and provided for said District to be governed by a Board of Commissioners; and
WHEREAS, Paragraph 7 of Article III of the St. Charles Parish Home Rule Charter provides the Parish Council with authority to transfer the responsibilities of said Board of Commissioners to this Parish Council and to abolish said Board of Commissioners;
NOW, THEREFORE, BE IT ORDAINED by the St. Charles Parish Council, acting as the governing authority of the Parish of St. Charles, State of Louisiana:
SECTION 1. That the functions of the Board of Commissioners of Gravity Drainage District No. 2 of St. Charles Parish, State of Louisiana, are hereby transferred to the St. Charles Parish Council and said Board of Commissioners is hereby abolished as of April 1, 1983.
SECTION 2. That on or prior to April 1, 1983, the Secretary and Treasurer of Gravity Drainage District No. 2 shall deliver all records of said District to the office of the Parish President.
SECTION 3. That the Director of Finance of the Parish shall serve as Treasurer of the District.
SECTION 4. That effective April 1, 1983, the St. Charles Parish Courthouse, Hahnville, Louisiana, shall be the domicile of said District, and the Parish President is authorized to publish a notice of the change in domicile in accordance with the provisions of R.S. 38:1765.
This ordinance having been submitted to a vote, the vote thereon was as follows:
YEAS: LANDRY, HOGAN, MELAN-CON, FAUCHEUX, DUFRENE, CLEMENT, RODRIGUE, GRIMES
NAYS: AUPIED
ABSENT: NONE
And the ordinance was declared adopted on this, the 21st day of March, 1983.
[Signature]
COUNCIL CHAIRMAN
[Signature]
SECRETARY
DELIVERED TO PARISH PRESIDENT
3-21-83
APPROVED: [Signature]
DISAPPROVED: _
[Signature]
*1051 RETURNED TO SECRETARY ON
3-21-83
AT 905 AM/PM
RECEIVED BY JB
NOTICE OF NEW DOMICILE OF GRAVITY DRAINAGE DISTRICT NO. 2 OF ST. CHARLES PARISH, STATE OF LOUISIANA
Pursuant to the provisions of an ordinance adopted by the St. Charles Parish Council, acting as the governing authority of the Parish of St. Charles, State of Louisiana, and Section 1765 of Title 38 of the Louisiana Revised Statutes of 1950 (R.S. 38:1765) on March 21, 1983, notice is hereby given that effective April 1, 1983, the St. Charles Parish Courthouse shall be the domicile of the Gravity Drainage District No. 2 of St. Charles Parish, State of Louisiana.
THUS DONE AND SIGNED at New Sarpy, Louisiana, on this the 21st day of March, 1983.
[Signature]
Parish President
GOTHARD, Judge, concurs.
I concur but would apportion the costs so that each party would pay its own costs.

. Article 12, Section 10 of the Louisiana Constitution of 1974 provides:
"(B) Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability.”
(Emphasis in original.)