773 So.2d 663 (2000)
LOUISIANA MUNICIPAL ASSOCIATION and the Parish of East Baton Rouge
v.
STATE of Louisiana and Murphy J. "Mike" Foster, through the Honorable Richard Ieyoub, Attorney General for the State of Louisiana.
No. 00-CA-0374.
Supreme Court of Louisiana.
October 6, 2000.
*664 Tina Vicari Grant, Richard Phillip Ieyoub, Attorney General, John Dunbar Koch, Larry Michael Roedel, David Alva Woolridge, Jr., Baton Rouge, Counsel for Applicant.
Robert R. Rainer, Lea Anne Batson, Baton Rouge, Counsel for Respondent.
John Paul LeBlanc, New Orleans, Counsel for Louisiana Association of Business (Amicus Curiae).
Jerry Glen Jones, Cameron, Mary Florence Quaid, Alfred William Speer, II, Baton Rouge, Counsel for Louisiana House of Representative (Amicus Curiae).
LEMMON, Justice.[*]
The principal issue in this appeal is whether a statute excluding certain tangible personal property from local sales and use taxes, enacted by the Louisiana Legislature in 1999, violates La. Const. art. III, § 2(A)(2), which prohibits the enactment in *665 a regular session held in an odd-numbered year of a "measure ... legislating with regard to tax exemptions, exclusions, deductions or credits." More precisely, the issue in this case is whether the constitutional prohibition applies to exemptions or exclusions from local taxes as well as state taxes.

Facts
By La. Acts 1999, No. 1266, the Legislature amended two subsections of La.Rev. Stat. 47:301 to exclude from local sales and use taxes any tangible personal property purchased for lease or rent.[1] Thereafter, the Louisiana Municipal Association (LMA)[2] commenced this action for injunctive and declaratory relief, seeking to enjoin the enforcement of portions of Act 1266 and to declare those portions unconstitutional to the extent they created an exemption or exclusion from local sales and use tax in violation of La. Const. art. III, § 2(A)(2). The trial court granted a preliminary injunction, and the parties moved for a trial on the merits of the final injunction.
After trial on the merits, the court granted a final injunction and declared unconstitutional the portions of Act 1266 that amended La.Rev.Stat. *666 47:301(10)(a)(iii) and 47:301(18)(a)(iii). The court reasoned that the constitutional prohibition of La. Const. art. III, § 2(A)(2) applies to both state and local tax exemptions and exclusions. Defendants appealed directly to this court. La. Const. art. V, § 5(D).

History of La. Const. art. III, § 2(A)(2)
Under the 1921 Constitution, the Legislature was required to meet in annual regular sessions, with alternating limits of sixty and thirty days, and the shorter sessions were restricted to budgetary or fiscal matters. The 1974 Constitution, as originally adopted, provided for annual regular session of no more than sixty days, with specified starting and latest ending dates.[3] La. Const. art. III, § 2(A) (1974). Section 2(A) did not restrict any regular session to budgetary or fiscal measures, but imposed the following restriction on regular sessions in odd-numbered years: "No measure levying a new tax or increasing an existing tax shall be introduced or enacted during a regular session held in an odd-numbered year."
A 1993 amendment rewrote Section 2(A) in its entirety. The 1993 amendment, the legislative history of which will be analyzed hereinafter in detail, made separate provisions for regular sessions in odd-numbered years and regular sessions in even-numbered years. In odd-numbered years, regular sessions, limited to no more than sixty days, must be "general in nature," with the following restriction on fiscal matters:
(2) ... No measure levying or authorizing a new tax by the state or by any statewide political subdivision whose boundaries are coterminous with the state, increasing an existing tax by the state or by any statewide political subdivision whose boundaries are coterminous with the state, or legislating with regard to tax exemptions, exclusions, deductions or credits shall be introduced or enacted during a regular session held in an odd-numbered year. La. Const. art. III, § 2(A)(2) (emphasis added).
In even-numbered years, regular sessions, limited to no more than thirty days, were restricted as follows:
(3) All regular sessions convening in even-numbered years ... shall be restricted to the consideration of legislation which provides for enactment of a general appropriations bill, implementation of a capital budget, for making an appropriation, levying or authorizing a new tax, increasing an existing tax, legislating with regard to tax exemptions, exclusions, deductions, reductions, repeal, or credits, or issuing bonds. La. Const. art. III, § 2(A)(3) (emphasis added).
The 1993 amendment thus altered the original last sentence of Section 2(A) in two significant ways. First, to the prohibition against levying a new tax or increasing an existing tax in an odd-numbered year, the amendment added for the first time a third prohibited measurelegislating with regard to tax exemptions, exclusions, deductions or credits. Second, the amendment added the modifying phrase "by the state or by any statewide political subdivision whose boundaries are coterminous with the state" after the first two prohibiting clauses regarding measures that levied or authorized a new tax or increased an existing tax.

Constitutional Analysis
In the present case, defendants contend that the pertinent language in La. Const. art. III, § 2(A)(2) precludes enactment only of state tax exemptions or exclusions in odd-numbered years, and thus the local tax exemption or exclusion at issue is constitutionally valid. On the other hand, the LMA argues that the pertinent language encompasses both state and local tax exemptions and exclusions, and thus the tax exemption or exclusion at issue is constitutionally invalid.
Statutes enacted by the legislative branch are presumed to be constitutional. *667 Board of Directors of La. Recovery Dist. v. All Taxpayers, Property Owners, and Citizens of the State of La., 529 So.2d 384 (La.1988). A party challenging the constitutionality of a statute must establish that the statute violates a specific constitutional provision. Matter of American Waste & Pollution Control Co., 588 So.2d 367 (La.1991). In adjudicating the challenge, the court must analyze and interpret the language of the constitutional provision specified by the challenger.
The starting point in the interpretation of statutory and constitutional provisions is the language of the law itself. Touchard v. Williams, 617 So.2d 885 (La. 1993). When the language is clear and unambiguous, and its application does not lead to absurd consequences, the provision shall be applied as written without further interpretation in search of legislative intent. La. Civ.Code art. 9; In re Louisiana Health Serv. & Indem. Co., 98-3034 (La.10/19/99), 749 So.2d 610. Only when the language is subject to more than one reasonable interpretation does the determination of the intent of the provision become necessary. In re Louisiana Health Serv. & Indem. Co., 98-3034 at p. 10, 749 So.2d at 615-16.
The language of La. Const. art. III, § 2(A)(2) relative to tax exemptions and exclusions is, by itself, clear and unambiguous. However, we must analyze the language, both of the entire amendment and of the critical portion, in the context of the enactment of the amendment in order to determine if there is more than one reasonable interpretation.
Section 2(A)(2) presently includes three separate types of tax measures whose enactment is prohibited in regular sessions held in odd-numbered years: (1) a measure levying or authorizing a new tax; (2) a measure increasing an existing tax; and (3) a measure legislating with regard to tax exemptions, exclusions, deductions or credits. The 1993 amendment modified the first two prohibitory measures by the phrase "by the state or by any statewide political subdivision whose boundaries are coterminous with the state." The same 1993 amendment added the third prohibitory measure (referring to tax exemptions or exclusions), but did not include the modifier. The LMA argues that since the Legislature employed the modifying phrase in two places and excluded it in the third, the court should not insert the modifier where the Legislature omitted it.
In determining whether the Legislature purposefully omitted the modifying phrase "by the state or by any statewide political subdivision whose boundaries are coterminous with the state" from the contemporaneously added prohibition against measures legislating with regard to tax exemptions, exclusions, deductions or credits, we must examine the manner in which the third prohibited measure and the modifying phrase became part of La. Acts 1993, No. 1041, proposing the amendment of La. Const. art. III, § 2(A).
The original Senate bill deleted the last sentence of the original Section 2(A), which had provided that "[n]o measure levying a new tax or increasing an existing tax shall be introduced or enacted during a regular session held in an odd-numbered year," and added the following new Subsections 2(A)(2) and 2(A)(3):
(2) All regular sessions convening in odd-numbered years shall be general in nature. The legislature shall meet in such a session for not more than sixty legislative days during a period of eighty-five calendar days. No such session shall continue beyond the eighty-fifty calendar day after convening. No new matter intended to have the effect of law shall be introduced or received by either house after midnight of the fifteenth calendar day, except by a favorable record vote of two-thirds of the elected members of each house.
(3) All regular sessions convening in even-numbered years shall be restricted to the consideration of legislation which provides for making an appropriation, *668 levying a new tax, increasing an existing tax, or issuing bonds. The legislature shall meet in such a session for not more than thirty legislative days in a period of forty-five calendar days. No such session shall continue beyond the forty-fifth calendar day after convening. No new matter intended to have the effect of law shall be introduced or received by either house after midnight of the tenth calendar day, except by a favorable record vote of two-thirds of the elected members of each house. (emphasis added).
Thus, the original bill contained no restrictions on regular sessions in odd-numbered years, but restricted regular sessions in even-numbered years to "consideration of legislation which provides for making an appropriation, levying a new tax, increasing an existing tax, or issuing bonds."
A Senate committee amendment rewrote Section 2(A)(2) to add the restriction on regular sessions in odd-numbered years that "[n]o measure levying a new tax, increasing an existing tax, or legislating with regard to tax exemptions or exclusions shall be introduced or enacted during a regular session held in an odd-numbered year."[4] The Senate committee amendment also added to Section 2(A)(3) an authorization for "legislating with regard to tax exemptions or tax exclusions" in regular sessions in even-numbered years.
As amended in Senate committee, Section 2(A)(2) thus contained the two types of tax measures that were previously prohibited and the third type of tax measure whose prohibition was added by the committee amendment. Because the Legislature in levying or authorizing a new tax generally includes exemptions, exclusions, deductions or credits for that tax, the clear purpose of the amendment was to restrict all aspects of the tax measures to regular sessions in even-numbered years (or to special sessions).
Significantly, Section 2(A)(2), as then amended, made no distinction between state and local taxes.[5]
When the amended bill moved to the House, that body added sixteen amendments, including an amendment that inserted, after the provisions in Section 2(A)(2) prohibiting the levying or authorizing of a new tax or the increasing of an existing tax, the limiting phrase "by the state or by any statewide political subdivision whose boundaries are coterminous with the state." All parties agree that the purpose of the peculiar modifying phrase was to prevent the Legislature from creating, by majority vote, a statewide political subdivision with the power to tax (as was done in 1988 with the Louisiana Recovery District) since the levying of a new tax or the increase in an existing tax requires a two-thirds vote of both houses. La. Const. art. VII, § 2. There is no suggestion that the purpose of this particular amendment was to differentiate state taxes from local taxes or that considerations of local taxation *669 were involved in any way in the amendment.
Because the purpose of the insertion of the modifying phrase was to prevent a specially created statewide political subdivision from levying a new state tax or increasing an existing state tax, there was no need to insert the modifying phrase after the provision in Section 2(A)(2) prohibiting legislation with regard to tax exemptions, exclusions, deductions or credits, which were not of concern at the time. However, the result of the insertion of the modifying phrase after the first two prohibitions in Section 2(A)(2) and the omission of the modifying phrase after the third prohibition resulted in language that, if read literally, would allow the Legislature, for example, to authorize the levy of a new local sales or use tax in a regular session in an odd-numbered year, but would not allow the enactment of exemptions or exclusions from that local tax at the same time. That result, defendants argue while citing La. Civ.Code art. 9,[6] would be an absurd consequence.
La. Civ.Code art. 9 is the Louisiana enactment of the "plain meaning rule" that "[w]hen the intention of the legislature is so apparent from the face of the statute that there can be no question as to its meaning, there is no room for construction." Norman J. Singer, Statutes and Statutory Construction § 46.01 (6th ed.2000). This court has varied from the literal language of a statute and found "room for construction" or interpretation of the statute very infrequently and only under limited circumstances.
One of the limited circumstances in which this court has varied from the literal language of a statute is the case in which there is an obvious omission of language, as opposed to the case in which a word or phrase, taken literally, is clear and unambiguous. For example, in State v. Bennett, 610 So.2d 120 (La.1992), this court concluded there was an obvious legislative oversight in the Code of Criminal Procedure regarding finality of judgments, since the Code did not contain any reference to applications for certiorari to this court. Comparing parallel provisions of the Code of Civil Procedure and noting that intermediate appellate courts had lacked jurisdiction over criminal appeals prior to a constitutional amendment effective in 1982, this court held that the legislative omission was unintentional and interpreted the finality of criminal judgments by reference to the denial of certiorari by this court.
In Curatorship of Parks, 210 La. 63, 26 So.2d 289 (1946), this court reviewed a provision of the Uniform Veterans Guardianship Act that authorized a curator to buy a house for an incompetent veteran, but did not provide any authority to sell a house. This court construed the special statute to also authorize a curator to sell a house that became unsuitable and to use the proceeds to acquire another house, noting from Earl T. Crawford, The Construction of Statutes § 178 (1940) that "the court may consider the spirit and reason of a statute where a literal meaning ... would defeat the clear purpose of the lawmakers." Id. at 292.
This court has also varied from the literal language of statutes when such an interpretation clearly was unintended and would defeat the purpose of the statute. In Dore v. Tugwell, 228 La. 807, 84 So.2d 199 (1955), this court remedied a clear legislative lapse in the amendment process when widows or widowers of former judges qualified for the retirement benefits of their deceased spouses under one part of the amendment, but were disqualified under a second part.
In Cousins v. City of New Orleans, 580 So.2d 536 (La.App. 4th Cir.1991), the court reviewed La.Rev.Stat. 23:1225 C(1), which provided a set-off against worker's *670 compensation benefits when the injured employee also received specified other benefits. Although the statute used the conjunctive "and" in specifying the other benefits whose receipt resulted in a setoff, the court determined that the Legislature obviously intended a reduction when the employee is receiving benefits from one of the listed sources, in effect changing the statutory "and" to "or." This court tacitly affirmed, granting certiorari and remanding the case for a factual determination regarding the one source of benefits that would serve to reduce the employer's worker's compensation obligation. Cousins v. City of New Orleans, 584 So.2d 1145 (La.1991).
In the present case, a literal interpretation of La. Const. art. III, § 2(A)(2), as applied to local taxes, would allow the Legislature to levy or authorize a local tax, but would prohibit the Legislature from providing exemptions or exclusions from that same tax. This result, while not totally absurd, certainly was totally unintended by the Legislature, which merely sought to prevent the creation by majority vote of a statewide political subdivision that could enact state taxes in contravention of the constitutional requirement of a two-thirds vote to levy a new tax or to increase an existing tax. La. Const. art. VII, § 2. Moreover, this result is at odds with the purpose of the amendment which, as clearly shown by its legislative history, was not concerned with local taxes.
We conclude that defendants have borne their heavy burden of demonstrating that the omission, in the 1993 amendment's final version, of the modifying phrase after the third prohibited measure was unintentional and contrary to the legislative intent.[7]

Decree
For the foregoing reasons, the judgment of the trial court is reversed, and plaintiffs action for declaratory and injunctive relief is dismissed.
NOTES
[*] Victory, J., not on panel. Rule IV, Part 2, § 3.
[1] As amended by Act 1266, the pertinent portions of La.Rev.Stat. 47:301 provide:

As used in this Chapter [Chapter 2. Sales Tax] the following words, terms, and phrases have the meaning ascribed to them in this Section, unless the context clearly indicates a different meaning:
. . .
(10)(a)(iii) ... For purposes of the imposition of the tax imposed by any political subdivision of the state, for the period beginning on July 1, 1999, and ending on June 30, 2000, the term "retail sale" or "sale at retail" shall not include one-fourth of the sales price of any tangible personal property which is sold in order to be leased or rented in an arm's length transaction in the form of tangible personal property. For purposes of the imposition of the tax imposed by any political subdivision of the state, for the period beginning on July 1, 2000, and ending on June 30, 2001, the term "retail sale" or "sale at retail" shall not include one-half of the sales price of any tangible personal property which is sold in order to be leased or rented in an arm's length transaction in the form of tangible personal property. For purposes of the imposition of the tax imposed by any political subdivision of the state, for the period beginning on July 1, 2001, and ending on June 30, 2002, the term "retail sale" or "sale at retail" shall not include three-fourths of the sales price of any tangible personal property which is sold in order to be leased or rented in an arm's length transaction in the form of tangible personal property. Beginning July 1, 2002, for the purposes of imposition of the tax levied by any political subdivision of the state, the term "retail sale" or "sale at retail" shall not include the sale of any tangible personal property which is sold in order to be leased or rented in an arm's length transaction in the form of tangible personal property.
. . .
(18)(a)(iii) ... For purposes of the imposition of the tax levied by any political subdivision of the state, for the period beginning on July 1, 1999, and ending on June 30, 2000, the term "use" shall not include one-fourth of the cost price of any tangible personal property which is purchased, imported, consumed, distributed, or stored and which is to be leased or rented in an arm's length transaction in the form of tangible personal property. For purposes of the imposition of the tax levied by any political subdivision of the state, for the period beginning on July 1, 2000, and ending on June 30, 2001, the term "use" shall not include one-half of the cost price of any tangible personal property which is purchased, imported, consumed, distributed, or stored and which is to be leased or rented in an arm's length transaction in the form of tangible personal property. For purposes of the imposition of the tax levied by any political subdivision of the state, for the period beginning July 1, 2001, and ending on June 30, 2002, the term "use" shall not include three-fourths of the cost price of any tangible personal property which is purchased, imported, consumed, distributed, or stored and which is to be leased or rented in an arm's length transaction in the form of tangible personal property. Beginning July 1, 2002, for purposes of the imposition of the tax levied by any political subdivision of the state, the term "use" shall not include the purchase, the importation, the consumption, the distribution, or the storage of any tangible personal property which is to be leased or rented in an arm's length transaction in the form of tangible personal property.
[2] The LMA asserted in its petition that it is the representative of 298 incorporated municipalities, four consolidated forms of government, and one urban parish.
[3] The starting date was changed by a 1990 amendment.
[4] A Senate floor amendment added tax deductions and credits to the prohibition against tax exemptions or exclusions.
[5] La. Const. art. III, § 2(A)(2) speaks of levying or authorizing a new tax. The power of taxation is vested generally in the Legislature. La. Const. art. VII, § 1. However, the taxing power of the Legislature is limited by other provisions in the Constitution. For example, La. Const. art. VI, § 29(A) expressly empowers local political subdivisions, if approved by referendum vote, to levy certain sales and use taxes up to three percent, and at higher rates if authorized by the Legislature. See La Const. art. VI, § 29(B). Significantly, La. Const. art. VI, § 29(D) authorizes the Legislature unilaterally to exempt or exclude tangible personal property from sales or use taxes levied by local political subdivisions. (This legislative power does not apply when bonds secured by local sales or use taxes have been authorized. La. Const. art. VI, § 29(D). The exemptions or exclusions also must be uniform. Id.) Thus, the levying of a new local sales or use tax operates differently from the enactment of a local sales or use tax exemption or exclusion, which may be done unilaterally by the Legislature.
[6] La. Civ.Code art. 9 provides:

When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
[7] While the LMA complained about the trial court's allowing into evidence the depositions of a senator and a representative involved in the passage of the 1993 constitutional amendment to La. Const. art. III, § 2(A)(2), we need not address the issue of the admissibility of that evidence because of the result we reach irrespective of the evidence. Nevertheless, we note that post-enactment statements of legislators on legislative intent generally have been excluded as having "limited value to an understanding of the clear meaning and legal effect of a statute." Norman J. Singer, supra at § 48.20.