GUIDRY, Justice.
|] The district court declared that Act No. 483 of the 2012 Regular Session of the Louisiana Legislature was enacted in violation of the constitutional requirements found in Article X, Section 29(F) of the Louisiana Constitution. The defendants appealed directly to this court pursuant to Article V, Section 5(D) of the Constitution. We granted the defendants’ request for *570 expedited consideration pursuant to La. Sup.Ct. Rule VI, § 4, docketed the case for briefing and oral argument, and have now completed our appellate review.[1] For the reasons set forth below, we affirm the district court’s judgment.[2]
FACTS AND PROCEDURAL HISTORY
The Louisiana Constitution in Article X, Section 29(F) provides in part as | ^follows:
Benefit provisions for members of any public retirement system, plan, or fund that is subject to legislative authority shall be altered only by legislative enactment. No such benefit provisions having an actuarial cost shall be enacted unless approved by two-thirds of the elected members of each house of the legislature.
During the 2012 Regular Session of the Louisiana Legislature, the House of Representatives considered House Bill No. 61 (“HB 61”), which provided for the establishment of a cash balance retirement plan for certain new members of the Louisiana State Employees’ Retirement System (“LASERS”), the Teachers’ Retirement System of Louisiana (“TRSL”), and the Louisiana School Employees’ Retirement System (“LSERS”) hired on or after July 1, 2013.[3] The House Retirement Committee met and discussed HB 61 on April 12, 2012, and favorably passed it out of committee by eleven votes to one. On May 1 and May 2, 2012, HB 61 was presented on the House floor.
On May 1, 2012, the Speaker of the House ruled a majority vote was sufficient to pass HB 61, rather than a two-thirds majority. The Speaker determined that because HB 61 established a new retirement plan for future employees and did not affect the existing benefits of current members of any retirement plan, La. Const, art. X, § 29(F) did not apply to require a two-thirds vote, a majority vote would suffice. See http://house.louisiana. gov/H_Video/WM/2012/May_2012/0501_12_ Day31_2012RS.asx. That ruling was appealed by a member of the House. The debate centered on whether the cash balance plan was a new plan that affected only future members and not the benefits of current members in the regular defined benefit plan. One representative stated: “This is not a modification of an existing plan. This is the creation of a new plan.” Id. The argument countering the Speaker’s ^ruling was that the word “future” describing “benefits” was removed from La. Const, art. X, § 29(F) in 2010, such that legislation that affects any member’s benefits, not only current benefits but also future benefits, would require a two-thirds vote. The Chair’s ruling was upheld by a vote of 63 yeas to 37 nays, with five members absent. See id.
HB 61 was again presented in the house the following day on May 2, 2012. A point *571 of order requested the Speaker to rule on the vote required to pass HB 61; the Speaker answered that a majority vote was appropriate. This ruling, too, was appealed. The debate focused on whether the cash balance plan was a new plan that affected only future benefits for members, whether current members or new hires. It was observed that the legislative auditor’s actuarial note concluded the cash balance plan as set forth in HB 61 would be somewhat more costly to the State than the current defined benefit plan. Because HB 61, as then configured, allowed certain current members of the retirement system to opt into the new, more costly plan, the argument was made that HB 61 also affected current members’ benefits. Therefore, the argument continued, La. Const, art. X, § 29(F) requires a two-thirds vote. The response in favor of upholding the Speaker’s ruling was that, even if a current member opted into the cash balance plan, not yet in existence, then it would be a future benefit and such legislation would not require a two-thirds vote. The House upheld the Speaker’s ruling by a vote of 77 yeas to 21 nays, with seven members absent. See Joint Exhibit No. 7; http:// house.louisiana.gov/H_Video/WM/2012/ May_2012/0502_12_Day32_2012RS.asx. HB 61 was then passed by the House on May 2, 2012, with 55 yeas to 45 nays, and referred to the Senate.
In the Senate, the bill was amended, and with amendments, the bill was passed on May 17, 2012, by a vote of 23 yeas to 11 nays, with 5 members absent. However, the House did not concur in the bill as amended in the Senate. The | ¿House and Senate appointed a conference committee, and the committee’s report was adopted by both the House and Senate. HB 61 was adopted by the Senate on May 30, 2012, by a vote of 26 yeas to 8 nays, with five absent. HB 61 was adopted by the House on May 30, 2012, by a vote of 68 yeas to 36 nays, with one absent. HB 61 was then signed into law as Act No. 483 by the Governor on June 5, 2012. The parties have stipulated that at no time did HB 61 receive the approval of two-thirds of the elected members of the House.
After the bill was enacted, the Retired State Employees’ Association (“RSEA”), Frank Lucien Jobert, Jr., Dudley Anthony Gautreaux, Benny Glynn Harris, Frances Dianne Landreaux Guillot, and Lorraine Simmons Trotter, filed the instant petition for declaratory judgment and permanent injunction against the State of Louisiana, Governor Bobby Jindal, and State Treasurer John Kennedy, challenging the validity of Act No. 483. Specifically, the plaintiffs asserted Act No. 483 was enacted in violation of the mandatory voting requirements set forth in La. Const, art. X, § 29(F). In their petition, the plaintiffs alleged the official actuarial note to HB 61, prepared by the Legislative Auditor, “clearly and unambiguously reported that HB 61 would have an actuarial cost.” The plaintiffs further alleged HB 61 did not receive approval of two-thirds of the elected members of the House. Therefore, they asserted, Act No. 483 violates La. Const, art. X, § 29(F).
The State and the Governor filed peremptory exceptions of no right of action and no cause of action, asserting the plaintiffs lacked standing and their petition for declaratory judgment failed to present a cause of action upon which relief could be granted. The Treasurer filed an answer to the plaintiffs’ petition. In a judgment signed on December 19, 2012, the district court overruled the State’s and the |,-governor’s peremptory exceptions.[4]
*572 On January 24, 2013, a trial was held on the plaintiffs’ petition for declaratory judgment and permanent injunction. After hearing oral arguments and reviewing the evidence, the district court in a written judgment signed on January 31, 2013, held that Act No. 483 of the 2012 Regular Session of the Louisiana Legislature was passed in violation of the constitutional requirements found in Article X, Section 29(F) of the Louisiana Constitution. The written judgment referenced oral reasons, given in open court on January 24, 2013, in which the district court stated in part:
This case boils down, at least in my humble opinion, to a very simple procedural issue. In passing House Bill 483, did the legislature comply with the constitutional procedural requirements necessary to have the requisite vote to pass this Act? And I’ve heard a lot since the filing of this suit on various motions, and in brief and again today, as to who had the better actuarial note that the legislature should consider, the legislative auditor or the Commissioner of Insurance — I mean, Commissioner of Administration, or as I think Mr. Buck— Mr. Driscoll in the Buck correspondence of October 10th, 2012 referred to it as the “Governor’s note.” He repeatedly referred to it the Governor’s note, the legislative auditor’s note.
I don’t think I come down to that credibility call as to do I accept Buck’s actuarial note or do I think that the legislative auditor’s. I go back and I start a pretty simple analysis. Go to the Constitution; I look at Article 3, Section 11: legislative auditor, constitutionally created post. There shall be a legislative auditor responsible solely to the legislature. He shall serve as fiscal advisor to it, shall perform the duties and functions provided by law related to auditing fiscal records of the State, its agencies, and political subdivisions. I’ve always been a believer in the Code of Civil Procedure that the word “shall” means mandatory, as opposed to maybe and permissive. These are mandatory duties, constitutionally imposed upon the legislative auditor ....
| Constitution Article 10, Section 29(F)— and I have to say, I think I agree that this is where the Speaker probably missed the boat as to the application of this to this proposed legislation. In 29(F), benefit provisions for members of any public retirement system, plan, or fund that is subject to legislative authority shall be altered only by legislative enactment. No such benefit provisions having an actuarial cost shall be enacted unless approved by two-thirds members of the elected members of each house of the legislature. Furthermore, no such benefit provision for any member of the state retirement system having an actuarial cost shall be approved by the legislature unless the funding source providing new or addition [sic] funds sufficient to pay all of the actuarial costs within ten years of the effective date of the benefit is identified in such enactment.
There is no question, based on the stipulation that has been entered into by the parties, that House Bill 61 which became Act 483 did not pass by a majority of either house. And, in fact, the stipulation indicates that the issue of the application of Constitution Article 10, Section 29(F) was raised at least twice with a considerable number of the members of *573 the House of the opinion that the two-thirds majority vote did apply....
So for those reasons, the Court will render judgment in favor of Plaintiffs, finding Act 483 in violation of-I should say passed in violation of the constitutional requirements of Article 10, Section 29(F), and for those reasons it will be struck.
DISCUSSION
We begin our review of the defendants’ assignments of error by pointing out what is not before this court. As the district court noted, the public policy merits of the legislation itself are not the subject of either the plaintiffs’ petition or the defendants’ appeal. We acknowledge the legislature’s intended purpose of monitoring and ameliorating the financial condition of the state’s retirement systems, and we make no comment on whether or not the legislation tends to further that laudable purpose. The legislature must attain and maintain actuarial soundness in the state and statewide public retirement systems. La. Const, art. X, § 29(E). The constitution does not dictate how that actuarial soundness is to be accomplished; instead, the mechanism by which actuarial soundness is achieved is 17left to the discretion of the legislature. City of New Orleans v. Louisiana Assessors’ Retirement & Relief Fund, 05-2548 (La.10/1/07), 986 So.2d 1. To this end, the legislature has “broad scope to experiment with economic problems,” and “courts do not substitute their social and economic beliefs for the judgment of legislative bodies, who are elected to pass laws.” Ferguson v. Skrupa, 372 U.S. 726, 730, 83 S.Ct. 1028, 1031, 10 L.Ed.2d 93. Our ruling today should therefore not be interpreted in any way as a judgment on the public policy merits of the legislation, but only upon whether the procedure for enacting that legislation complied with the protective mandates of our state constitution. With those prefatory remarks in mind, we turn to the assignments of error asserted by the defendants.
Standing
The threshold issue to be resolved is whether the plaintiffs have standing or the right to bring this suit for declaratory judgment. Stated differently, we must determine whether the plaintiffs are in the class of persons to whom the law affords this particular cause of action. The defendants have assigned as error on appeal the district court’s ruling finding the plaintiffs had the requisite standing to seek declaratory relief. We find no error in the district court’s judgment overruling the defendants’ peremptory exception of no right of action. Article 681 of the Louisiana Code of Civil Procedure provides in pertinent part, “[A]n action can be brought only by a person having a real and actual interest which he asserts.” In the district court, the plaintiffs claimed standing based inter alia on their status as taxpayers, asserting in their petition: “As Louisiana taxpayers, the individual plaintiffs would be harmed by the implementation of retirement provisions that increase state expenditures and that have been passed by the Legislature in contravention of the Louisiana Constitution.... ”
In Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d 1354 (La.1991), this court noted that Louisiana jurisprudence recognizes the right of a taxpayer to enjoin unlawful action by a public body. Id. at 1357. “Under Louisiana law, a taxpayer may resort to judicial authority to restrain public servants from transcending their lawful powers or violating their legal duties in any unauthorized mode which would increase the burden of taxation or otherwise unjustly affect the taxpayer or *574 his property.” Id. at 1357, citing Stewart v. Stanley, 199 La. 146, 5 So.2d 531 (1941). As the court further explained, “[t]he fact that the taxpayer’s interest may be small and insusceptible of accurate determination is not sufficient to deprive him of the right.” Id. at 1357-58. The defendants assert this court’s decision in Louisiana Associated General Contractors, Inc. requires the plaintiffs to show the disputed legislation increases their individual tax burden with certainty and to demonstrate a provable impact on their tax burden. The defendants argue that no testimony or other evidence proved any impact on the plaintiffs’ individual tax burden.
We find no error in the district court’s decision overruling the exception of no cause of action. In this case, although there was no ultimate factual determination by the district court that Act 483 would necessarily increase the state’s contributions to the retirement system, the plaintiffs produced testimony and evidence that Act 483 was predicted to have an actuarial cost resulting in an increase in the state’s expenditures. The spending of tax money, no matter how minuscule the effect on the State’s budget, clearly affects the public fisc. See Ralph v. City of New Orleans, 06-0153 (La.5/5/06), 928 So.2d 537, 538-39. “When a plaintiff is attempting to restrain action by a public body that affects the public fisc, the plaintiff has an interest, however small and indeterminable, which is sufficient to afford him a right of action.” Id. Accordingly, the plaintiffs have set forth a sufficient real and actual interest in the cause of action.
| ^Application of La. Const, art. X, § 29(F)
In this assignment of error, the defendants assert the district court erred in applying La. Const, art. X, § 29(F) to its analysis of Act No. 483. The defendants assert the cash balance retirement plan created by the Act does not have any members and does not alter the benefits for members of any system because it applies only to employees hired on or after July 1, 2013. In their supplemental brief, the defendants submit HB 61 did not alter a benefit provision for any current “member” of a public retirement system subject to legislative authority. Without citation to any Revised Statute, the defendants contend that “membership” is defined by statute as an active or inactive employee who has not withdrawn from the system. The defendants also assert that, pursuant to La. Const, art. X, § 29(E), retirees are also no longer defined as members, but rather as retirees. Act No. 483, the defendants argue, does not alter or change the benefit structures or the formula applicable to determining the benefits for current members; instead, it creates a new benefit structure that will apply to new hires who have never participated in any plan, and therefore have no benefits to alter. The defendants assert HB 61 established a new plan, or tier, within each of the three existing systems, and the new tier would apply, by the plain terms of the legislation, only to persons employed on or after July 1, 2013.
We find no error in the district court’s application of La. Const. art. X, § 29(F) to Act No. 483, or HB 61. La. Const, art. X, § 29(F) provides that “[bjenefit provisions for members of any public retirement system, plan, or fund that is subject to legislative authority shall be altered only by legislative enactment.” Initially we find that, as the district court concluded, and the defendants have essentially stipulated, HB 61 does not create a new and separate retirement plan for future hires. By the very terms of the legislation itself, HB 61 does not create a wholly new retirement plan for new hires, but instead creates a *575 “tier” within each | inof the current retirement systems, which new tiers will be administered and managed by the current retirement systems. See Act No. 483, Sect. 1399.1 (“There is hereby created within each of the following state retirement systems a cash balance plan....”); see also Joint Exhibit. No. 6. Accordingly, the fact that the cash balance plan is a new plan within the existing retirement system does not remove it from the constitutional protections afforded in by Article X, § 29(F). Nonetheless, we are called upon to interpret Article X, § 29(F) to determine its scope, given the arguments of the defendants.
The standards for interpreting the constitution have been summarized as follows:
The starting point in the interpretation of constitutional provisions is the language of the constitution itself. Louisiana Mun. Ass’n v. State, 00-0374, p. 5 (La.10/6/00), 773 So.2d 663, 667. When a constitutional provision is plain and unambiguous, and its application does not lead to absurd consequences, its language must be given effect. Id. at pp. 5-6, 773 So.2d at 667; State ex rel. Guste v. Board of Com’rs. of Orleans Levee Dist., 456 So.2d 605, 609 (La.1984); Bank of New Orleans & Trust Co. v. Seavey, 383 So.2d 354, 356 (La.1980).
When the constitutional language is subject to more than one reasonable interpretation, however, the determination of the intent of the provision becomes necessary. Louisiana Mun. Ass’n., 00-0374 at p. 6, 773 So.2d at 667. In seeking to ascertain constitutional intent, the same general rules used in interpreting laws and written instruments are followed. Caddo-Shreveport Sales & Use Tax Comm’n. v. Office of Motor Vehicles, 97-2233, p. 6 (La.4/14/98), 710 So.2d 776, 780; Radiofone, Inc. v. City of New Orleans, 93-0962, p. 6 (La.1/14/94), 630 So.2d 694, 698. This court has stated that the function of a court in construing constitutional provisions is to ascertain and give effect to the intent of the people who adopted it. Caddo-Shreveport, 97-2233 at p. 7, 710 So.2d at 780; Radiofone, 93-0962 at p. 6, 630 So.2d at 698. Additionally, we have determined that the understanding that can reasonably be ascribed to the voting population as a whole controls the interpretation. Id. In other cases, however, this court has stated that in construing constitutional provisions, a court should ascertain and give effect to the intent of both the framers of the amendment and of the people who adopted it. See Board of Com’rs. of Orleans Levee Dist. v. Department of Natural Resources, 496 So.2d 281, 298 (La.1986) (on rehearing). All of these principles are correct statements of law. Nevertheless, to harmonize them, we will add that in construing an ambiguous constitutional provision, a court should ascertain and give effect to the intent of both Inthe framers of the provision and of the people who adopted it; however, in the case of an apparent conflict, it is the intent of the voting population that controls. See Arata v. Louisiana Stadium & Exposition Dist., 254 La. 579, 225 So.2d 362, 372 (1969).
East Baton Rouge Parish School Bd. v. Foster, 02-2799, pp. 16-17 (La.6/6/03), 851 So.2d 985, 996.
Applying these principles, we note that Article X, § 29(F) does not, on its face, distinguish between benefit provisions for future members of a public retirement system and benefit provisions for current or existing members of a public retirement system. Much of the debate in the 2012 Regular Session on HB 61 centered on whether only current benefit provisions for current members came within the scope of *576 the Article’s protection or whether such protection also encompassed future benefit provisions for future members. However, according to the plain wording of this Article (which does not restrict “benefit provision” or “member”), it is entirely logical to interpret Article X, § 29(F) to include benefit provisions for members, both future and existing, of a public retirement system, rather than limit the scope of the Article to current benefit provisions for current members of a public retirement system. Any other interpretation would not be consistent with the intent of the framers and the voters, and, further, would inevitably lead to absurd consequences.
The history of Article X, § 29(F) supports our finding that the protections of the Article are intended to apply to any retirement benefit provisions, whether deemed a future benefit or a current benefit, for a member of certain public retirement systems. In 1987, the Legislature added, and the voters approved, Article X, § 29(E), which was intended to secure and maintain the actuarial soundness of the retirement systems.[5] Article X, § 29(E)(5), provided in pertinent Impart: “Future benefit provisions for members of the state and statewide public retirement systems shall only be altered by legislative enactment.”
In 2007, by Act No. 484, the Legislature passed and the voters approved an amendment to La. Const, art. X, § 29(E). Section 29(E)(5)(b) read in pertinent part as follows:
Future benefit provisions for members of the state and statewide public retirement systems shall be altered only by legislative enactment; however, no such benefit provision for any member of a state retirement system having an actuarial cost shall be approved by the legislature unless a funding source providing new or additional funds sufficient to pay all such actuarial cost within ten years of the effective date of the benefit provision is identified in such enactment.
Senate Bill 127 became Act No. 484 of 2007, and was intended to require that the creation of future benefits for state systems with an actuarial cost be enacted by legislative action and include a new funding source that is adequate to pay the cost of that benefit within ten years.[6]
In 2010, the Legislature further amended Article X, § 29, by amending Section 29(E) and adding Section 29(F). According to the Digest for HB 229, which became Act. No. 1048, the bill proposed that no benefit provision for members of Louisiana public retirement systems that *577 has an actuarial cost shall be approved except by legislative enactment by two-thirds vote of the elected members of each house of the legislature. The 2010 amendment, which was approved by the voters, introduced a requirement that benefit provisions for 1 ^members of any public retirement system, not only state and statewide systems, could be altered only by legislative act. The amendment also required that for proposed changes to benefit provisions of any public retirement system having an actuarial cost, two-thirds of each house of the Legislature, rather than a simple majority, would have to approve of the changes. This change was intended to precipitate more thought and discussion prior to such changes being passed, as well as to decrease the number of retirement bills with fiscal impact that make it through the legislative process. However, “changes that would produce no cost or a savings could still be passed with a simple majority vote.”[7]
The amendment also deleted the limitation of the scope of the Article to “future benefit provisions for members” and substituted “benefit provisions for members” of any public retirement system. This change was consistent with the goal of reining in public pension costs, such that any benefit provision of a public retirement system could be altered only by legislative enactment. The Article thus requires that benefit provisions of a public retirement system may not be changed or altered without legislative enactment.
We find unavailing the defendants’ suggestion that the Article does not apply to the creation of new benefit provisions for future members or new hires. To adopt such a reading of the Article would lead to the illogical result that retirement plans for new hires would not be subject even to the requirement of legislative enactment, and could be created or modified merely by resolution or without legislative involvement. Clearly the goal of monitoring and ameliorating the actuarial soundness of state retirement systems would not be served by removing legislative involvement in creating or altering benefit provisions for future members of a public retirement system. Notably, La.Rev.Stat. 11:411, disentitled “Eligibility for membership,” provides, “Each person who becomes an employee in the state service, except those specifically excluded or as to whom an option or election is provided in this Section, shall become a member of the system as a condition of employment.” Further, we note that the phrase “benefit provisions for members of any public retirement system ... ”, generally refers to the benefit provisions of a system, and not the accrued benefits of any particular member of a public retirement system, which are already shielded from diminishment or reduction by Article X, § 29(E). Accordingly, simply because a current member’s benefits may not be affected by proposed legislation does not remove overall alterations to the benefit provisions of a retirement system from the purview of the legislature.
This court would trample upon the will of both the framers of the constitution and the electorate if it were to limit the protections afforded by the Article to changes in benefit provisions only for current or existing members of a public retirement system. See Carter v. Duhe, 05-0390, p. 10 (La.1/19/06), 921 So.2d 963, 970 (“[I]t is not the function of the judicial branch in a civilian legal system to legislate by inserting ... provisions into statutes where the *578 legislature has chosen not to do so.”). Our review of the legislative history supports our interpretation that the requirements of Article X, Section 29(F) are not limited to current benefits for current retirement system members. The purpose of the two-thirds vote requirement was to help prevent “unfunded liabilities from growing any quicker than they have in the past,” and, to that end, it would apply to any legislation “that would potentially increase costs, expenses, unfunded liabilities of any of the systems.” Senate Comm, on Retirement; Minutes of Meeting May 24, 2010 (testimony of Rep. Kevin Pearson). Indeed, the act amending Article X, Section 29(F) provided in the introductory paragraph that it was “A Joint Resolution ... to require a two-thirds vote for passage of a benefit provision having |1fian actuarial cost....” Accordingly, we can discern no limitation or restriction on the temporal nature of the benefit to be enacted or modified, such that subsequent to the amendment of Article X, Section 29(F), as adopted by the voters, any benefit provision in a state retirement system having an actuarial cost must be enacted by a two-thirds vote of the legislature.
The Legislative Auditor’s Actuai’ial Note
We next turn to the issue of whether the district court erred in finding that, for the limited purpose of determining whether a retirement bill has an actuarial cost, thereby requiring a two-thirds vote pursuant to Article X, § 29(F), the legislature must rely on the actuarial note prepared by the legislative auditor, which must by law be attached to every retirement bill. The defendants argue that the legislative auditor is not the legislature’s sole fiscal advis- or, citing La. Const. Art. Ill, § 11, such that the legislature is at liberty to consider fiscal information from sources other than the legislative auditor. In the House Retirement Committee, the actuarial notes of the legislative auditor and an outside auditor retained by the administration were both presented and explained. While the legislative auditor’s actuarial note generally predicted an increase in actuarial costs over the current defined benefit plan, the outside actuary’s note predicted rather specifically a reduction in actuarial costs, i.e., a savings. The defendants maintain that it is within the legislature’s authority, after thought and discussion, to decide whether a proposed retirement benefit provision results in an actuarial cost increase or savings compared to the existing plan, and thus to determine whether a majority vote is appropriate for adoption. The defendants argue there is no constitutional limitation on the legislature requiring it to consider, solely and exclusively, the fiscal advice and actuarial notes from the legislative auditor.
We decline to adopt the application of La. Const. Art. Ill, § 11 advocated by | ,fithe defendants.[8] Instead, we interpret the constitutional article and the relevant statutes, La.Rev.Stat. 24:513 and La.Rev. Stat. 25:521, when read together, as mandating that the constitutionally-created legislative auditor is the only auditor with the authority to prepare and submit the *579 requisite actuarial note to the legislature regarding any proposed state retirement system. To reach this conclusion, it is necessary to review the constitutional and statutory provisions relating to the legislative auditor’s authority.
La. Const, art. Ill, § 11, provides in pertinent part:
There shall be a legislative auditor responsible solely to the legislature. He shall serve as a fiscal advisor to it and shall perform the duties and functions provided by law related to auditing fiscal records of the state, its agencies, and political subdivisions.
The defendants emphasize the language in Article III, § 11, providing the legislative auditor “shall serve as a fiscal advis- or” to the legislature. The defendants contend this language demonstrates the legislative auditor is only one of several fiscal advisors the legislature may consult. However, the Article goes on to provide that the legislative auditor “shall perform the duties and functions provided by law related to auditing fiscal records of the state, its agencies, and political subdivisions.” Therefore, the question is not whether the legislature may consult other fiscal advisors in deciding on legislation or carrying out its functions, but whether the legislative auditor’s duties, as created by law, include determining the actuarial costs, if any, of proposed retirement legislation for the purposes of Article X, § 29(F).
The many powers and duties of the legislative auditor, i.e., those “provided |l7by law,” are set forth in La.Rev.Stat. 24:513, and specifically include “the authority ... to examine, audit, or review the books and accounts” of public retirement systems, La.Rev.Stat. 24:513(A)(l)(a), and “the authority to evaluate on a continuing basis all aspects of any state, municipal, or parochial retirement system, funded in whole or in part out of public funds, as to its actuarial soundness,” La.Rev.Stat. 24:513(0(1). The legislature has further granted subpoena power to the legislative auditor in the performance of his duties. See La. Rev.Stat. 24:513(M).
Most pertinently, La.Rev.Stat. 24:513(D)(2) mandates the legislative auditor “shall provide actuarial notes on proposed legislation as required by Section 521 of this Chapter.” La.Rev.Stat. 24:521(A) provides as follows:
Every bill, joint resolution, and simple or concurrent resolution introduced in the legislature proposing any change in the law relative to any state, municipal or parochial retirement system, funded in whole or in part out of public funds shall have attached to it at the time of its consideration by any committee of either house of the legislature a brief explanatory statement or note which shall include a reliable estimate of the financial and actuarial effect of the proposed change in any such retirement system. The statement or note shall be known as an actuarial note. Such note shall be attached to the original of each proposed bill or resolution which is reported favorably by any committee of either house of the legislature, but shall be separate therefrom, shall be clearly designated as an actuarial note and shall not constitute a part of the law or other provisions or expression of legislative intent proposed by the bill or resolution.
La.Rev.Stat. 24:521(B)(1) mandates the legislative auditor alone shall have the duty to prepare the actuarial note attached to such legislation:
Subject to the provisions of this Subsection, for each bill or resolution for which an actuarial note is required as provided in Subsection A of this section a request for an actuarial note shall be presented to the legislative auditor who shall have the duty to prepare the note *580 as promptly as possible. Actuarial notes shall be prepared in the order of receipt of request for such notes. [Emphasis supplied.]
While the constitution “does not grant any authority to the legislative auditor, [as] it simply provides for the office,” the duties and powers of the legislative auditor 11shave otherwise clearly been granted and delineated by the legislature itself. See Kyle v. Louisiana Pub. Service Comm’n, 03-0584 (La.App. 1 Cir. 4/2/04), 878 So.2d 650, 655. By statute then, the legislature has deemed the legislative auditor to be the fiscal advisor with the authority to prepare and submit the requisite actuarial note to the legislature regarding any proposed change to a state retirement system.
We agree with the defendants that the legislature, when drafting legislation or considering the merits of proposed legislation, is not precluded from seeking advice and counsel from fiscal advisors other than the legislative auditor. Indeed, the delegates to the Louisiana Constitutional Convention of 1973 were quite resolute that the legislative auditor not be the only fiscal advisor to that body.[9] Nevertheless, La. Const, art. Ill, § 11 must be read together with La.Rev.Stat. 24:513 and 24:521. Article III, § 11 mandates the legislative auditor shall be responsible solely to the legislature, shall serve as a fiscal advisor to the legislature, and shall perform the duties and functions provided by law. With regard to preparing the mandatory actuarial note on proposed legislation regarding a public retirement system, however, the legislature by virtue of La. Rev. Stats. 24:513 and 24:521 has deemed the legislative auditor as having the sole responsibility to | ^prepare and submit the obligatory actuarial note to be attached to such legislation when it is considered by the legislature or one of its committees. Certainly, the legislature could have provided otherwise had it chosen to do so, but unless and until the statutorily-imposed duty of the legislative auditor to prepare the actuarial note is altered, the note prepared under his direction is determinative of the facts it contains, for the purpose of determining whether the dictates of La. Const, art. X, § 29(F) apply to require enactment of the proposed legislation by a two-thirds majority of the elected members of each house of the legislature.
Because the statutorily-required actuarial note prepared by the legislative auditor *581 estimated an increase in the financial and actuarial costs of the cash balance plan as compared to the current defined benefit plan,[10] the district court correctly found that a two-thirds vote of the elected members of each house of the legislature was required by La. Const, art. X, § 29(F) for its enactment. Because it was stipulated that Act 488 did not receive an affirmative vote from two-thirds of the elected members of the House, we find no error in the district court’s judgment that Act 483 was passed in violation of La. Const, art. X, § 29(F).
| ¡^CONCLUSION
The district court declared that Act No. 483 of the 2012 Regular Session of the Louisiana Legislature was enacted in violation of the constitutional requirements found in Article X, Section 29(F) of the Louisiana Constitution. For the reasons set forth above, we find the district court correctly determined the plaintiffs had the requisite standing to challenge the constitutionality of the legislation enacting new retirement tiers within the existing retirement systems for employees hired on or after July 1, 2013. We hold the requirements of Article X, Section 29(F) are not limited to legislation effecting changes to current benefits for current retirement system members, but instead mandate a two-thirds vote for enactment of any state retirement benefit provision having an actuarial cost. Finally, we hold La. Const, art. Ill, § 11, and La. Rev. Stats. 24:513 and 24:521, when read together, mandate that the legislative auditor shall prepare the requisite actuarial note to be attached to any proposed retirement legislation, and this note is determinative of whether La. Const, art. X, § 29(F) applies to require a two-thirds vote for enactment of the proposed legislation. Because the legislative auditor’s actuarial note for HB 61 (Act 483) estimated an actuarial increase for the proposed cash balance plan over the current defined benefit plan, a vote of two-thirds of the elected members of the House was required pursuant to La. Const, art. X, § 29(F). Because it was stipulated that a two-thirds vote was not obtained in the House, the district court correctly found that Act 483 was enacted in violation of Article X, § 29(F). Accordingly, we affirm the district court’s judgment.
AFFIRMED

. Parenthetically, we note the legislature postponed implementation of 2012 La. Acts 483 by Concurrent Resolution in 2013 HCR 2, which has been passed by the House and the Senate, and which has been sent to the Secretary of State.

. We also deny the plaintiffs’ motion to dismiss the defendants’ appeal. We conclude the district court’s judgment is a final appeal-able judgment under La. Code Civ. Proc. art. 1918, see Hinchman v. International Brotherhood of Electrical Workers # 130, 292 So.2d 717 (La.1974), and that our jurisdictional authority under La. Const, art. V, § 5(D) has been properly invoked, see Greater New Orleans Expressway Comm'n v. Olivier, 02-2795 (La.11/18/03), 860 So.2d 22.

. Act 483 of 2012 created the so-called "Cash Balance Plan," a 401(k)-style retirement plan for state employees hired after July 1, 2013. The effective date of the Cash Balance Plan, however, has been delayed until July 1, 2014, by the passage of House Concurrent Resolution No. 2 of the 2013 Regular Session.

. The plaintiffs refer to the district court's reasons given on December 3, 2012, and the *572 district court at the bench trial on January 24, 2012, also referred to reasons it had previously given in denying the defendants' peremptory exceptions reurged at the close of the plaintiffs’ case in chief; however, the record before us does not contain either a transcript of the December 3, 2012 hearing or the district court’s reasons.

. "Prior to 1988, the state failed to ensure that appropriate employer contributions kept pace with benefits, resulting in an 'unfunded accrued liability' (UAL), which is the debt owed by the state to fully fund its retirement systems. UAL also can be created in other ways, such as investment losses, large pay raises or increased longevity of retirement system members. The UAL can be divided into two groups. The 'initial' UAL, which is the amount of debt that was in existence as of June 30, 1988, is constitutionally mandated to be paid off by 2029. The 'new' UAL, created after June 30, 1988, is generally amortized over 30 years. Louisiana adheres to an annual payment schedule in order to retire the debt as required. Portions of the existing payment schedule are back-loaded, with payments set to balloon over time as the 2029 payoff date nears.” Public Affairs Research Council of Louisiana, Inc., Guide to the Constitutional Amendments, October 20, 2007, http://www.parlouisiana.org/s3web/1002087/ docs/Publications/ConGuide2007.pdf.

. See http://senate.la.gov/sessioninfo/Archives/ 2007/RS/Highlights/LinkShell.asp?s= Retirement; see also Public Affairs Research Council of Louisiana, Inc., Guide to the Constitutional Amendments, October 20, 2007, http://www.parlouisiana.org/s3web/1002087/ docs/Publications/ConGuide2007.pdf.

. See Public Affairs Research Council of Louisiana, Inc., Guide to the Constitutional Amendments, November 2, 2010, http://www. parlouisiana.org/s3web/1002087/docs/ Publications/ConstAmend_Nov2010.pdf.

. Contrary to the implication of the defendants' argument, the record is devoid of any indication the legislature made a considered determination that Act 483 would not result in an increased actuarial cost over the current defined benefit plan, even though there were competing actuarial notes and testimony from three actuaries. Although the Speaker did conclude that a two-thirds vote was not required — on the basis that Article X, § 29(F) did not apply because the cash balance plan affected only future members, and that ruling was ultimately sustained by a majority of the House, the Speaker made no such finding, nor did the House as a body specifically vote and determine, that HB 61 (Act 483) would result in no increase in actuarial costs.

. The initial version of Article III, § 11 provided in relevant part: "The legislative auditor shall be responsible solely to the legislature and shall serve as fiscal advisor to the legislature.” Some delegates to the convention expressed concern about this provision, noting the legislature currently had any number of advisors and that "[c]hecking into the advisability and the wisdom of how money is spent should be left to the executive branch, the legislative branch, and the administrative branch....” Record of the Louisiana Constitutional Convention of 1973: Convention Transcripts, vol. V, 19th day, July 25, 1973, 376 (remarks of Delegate Womack). An amendment was then proposed to provide that the legislative auditor "shall serve as a fiscal advisor.” [Emphasis supplied.] This amendment passed, with several delegates expressing their approval: "He doesn't have to be the only advisor.... I think this is good because it allows the legislative auditor to merely be one of the fiscal advisors.... ” Id. at 377 (remarks of Delegate Arnette).
Notwithstanding this history for Article III, § 11, and whether the legislative auditor would be the sole "fiscal advisor” to the legislature, there is no suggestion whatsoever that the convention delegates in 1973 had contemplated whether the legislative auditor would solely be charged with the duty to prepare and submit actuarial notes to be attached to proposed retirement legislation, because La. Rev. Stats. 24:513 and 24:521 were not enacted until 1975. Moreover, it was not until 2010 that Article X, § 29(F) was amended to require a two-thirds vote for enactment of retirement legislation having an actuarial cost.

. The actuarial note prepared by the legislative auditor estimated some $600,000.00 in additional administrative expenses to be borne by the retirement systems in implementing the cash balance plan. The director of LASERS testified at 'trial that these additional expenses would necessarily be paid out of funds within the system itself, thereby increasing the systems’ costs and impacting its investments. An "actuarial note” includes an estimate of both the "financial and actuarial effect of the proposed change in any [ ] retirement system.” See La.Rev.Stat. 24:521(A).
The actuarial note also generally estimated that the cash balance plan would result in an increase in actuarial costs when compared to the current defined benefit plan. Although the dollar amount of the cost increase was not specified, the assumptions underlying the estimate were set forth in the note. La.Rev.Stat. 24:521(C) provides as follows:
The note shall be factual in nature, as brief and concise as may be, and shall, if possible, provide a reliable estimate in dollars. In addition, it shall include both the immediate effect and, if determinable or reasonably foreseeable, the long range fiscal and actuarial effect of the measure. If, after careful investigation, it is determined that no dollar estimate is possible, the note shall set forth the reasons why no dollar estimate can be given. No comment or opinion shall be included in the actuarial note with regard to the merit, or lack thereof, of the measure for which the note is prepared. However, technical or mechanical defects may be noted.