JgJAMES L. CANNELLA, Judge.
In a suit by six hunting clubs[1] and the Parish of St. John the Baptist (the Parish), relative to certain property in dispute, the newly established Maurepas Swamp Wildlife Management Area, the Defendant, the State of Louisiana, through the Department of Wildlife & Fisheries (DWF), appeals from a judgment denying its declina-tory exception of improper venue. We affirm.
In January of 1952, the Lutcher and Moore Cypress Lumber Company, Ltd. (Lutcher and Moore), owners of the property in dispute, donated to the Parish a servitude, or right of use, to construct a drainage canal (the Reserve Canal) through the property. At that time, certain camps, which had been leased by Lutcher and Moore to various hunting clubs, were located partly or wholly on the Parish’s servitude. Thereafter, the Reserve Canal was completed.
lain June of 2001, Lutcher and Moore donated the property in dispute to DWF to be used as a wildlife preserve. Thereafter, the DWF notified the hunting clubs by letter that they must remove their buildings in conformity with its policy. Although the land would be available for use by hunters and fishermen, the DWF prohibits overnight camping. The various hunting clubs then donated their camps to the Parish, in exchange for which, the Parish agreed to lease the camps back to the hunting clubs with the condition that hunting clubs permit the camps to be used for public purposes, by non-members, for emergencies and for maintenance of the Reserve Canal.
The hunting clubs refused DWF’s demand to remove their buildings, some of which were constructed at great cost and difficulty over 50 years. Plaintiffs contend that the camps are located on the Parish servitude, and that the DWF cannot force them to remove their buildings. Then, the DWF notified Plaintiffs that it would remove the camps on July 1, 2002, if the hunting clubs failed to do so.
The dispute escalated, and Plaintiffs through their respective representatives, filed suit in the Parish against the DWF. The suit requested a declaratory judgment of ownership of the camps and the property on which the camps are located, a temporary restraining order (TRO) and a permanent injunction to prevent the DWF from tearing down the buildings. A TRO was granted on March 27, 2002 and the DWF subsequently filed an exception of improper venue, contending that proper venue is in Baton Rouge, Louisiana, pursuant to La.R.S. 56:7.
The exception of improper venue was heard on May 1, 2002 and denied that same day. The trial judge concluded that R.S. 56:7 is not applicable because no “rule, *1231 regulation or action adopted by the DWF” is involved in this case and that it involves the “rights to ownership and rights to use of buildings and improvements” on the land, triggering the provisions of La.C.C.P. art. 80. The trial judge further Lfound that the venue provision of R.S. 56:7 does not supercede C.C.P. art. 80. She further extended the TRO granted by the court in March of 2002.[2]
On appeal, the DWF contends that the trial judge erred in denying the exception of improper venue and argues that venue is proper in Baton Rouge for cases against it under R.S. 56:7, La.R.S. 36:602, or R.S. 13:5104(A). Furthermore, it argues that C.C.P. art. 80 is not applicable because the hunting clubs and the Parish failed to obtain authorization from the Legislature to file this suit.
La.R.S. 56:7 provides in part:
A. (1) The domicile of the Louisiana Wildlife and Fisheries Commission is and shall be in Baton Rouge, Louisiana. However, the Seafood Division, within the Department of Wildlife and Fisheries, shall remain located in the city of New Orleans....
B. Any person in interest ivho feels aggrieved by any rule, regulation, or other action adopted by the Louisiana Wildlife and Fisheries Commission, including an action by one who seeks the closure or modification of any hunting season in any part of the state, may test its legality in a court of competent jurisdiction at the domicile of the commission. [Emphasis added]
La.R.S. 36:602 states in part:
A. The Department of Wildlife and Fisheries ... shall be a body corporate with the power to sue and be sued. The domicile of the department shall be in Baton Rouge, Louisiana.
B. The Department of Wildlife and Fisheries., shall control and supervise all wildlife of the state, including fish and all other aquatic life, and shall execute the laws enacted for the control and supervision of programs relating to the management, protection, conservation, and replenishment of wildlife, fish, and aquatic life in the state, and the regulation of the shipping of wildlife, fish, furs, and skins.
The department shall also be responsible for the conservation and management of all renewable resources on all wildlife management areas, wildlife refuges, scenic rivers, and wildlife preserves that it may own or lease. | BThe department shall also exercise such powers and perform such functions as required with regard to all other duties delegated by law....
The DWF cites several cases holding that venue is proper in Baton Rouge. We agree with the trial judge that the cases are clearly distinguishable and therefore inapplicable here.
In Demolle v. Louisiana Dept. of Wildlife & Fisheries, 580 So.2d 1083 (La.App. 4th Cir.1991), the holders of certain oyster leases on state owned water bottoms sought a declaratory judgment concerning the construction and validity of their lease contracts with the DWF. The suit was based on actions taken by the DWF changing or modifying the leases. The court found that R.S. 56:7 was the applicable venue provision since the case involved lease rights between the oystermen and the DFW.' In Jurisich v. Seafood Divi *1232 sions of La, Dept. of Wildlife & Fisheries, 95-2049 (La.App. 4th Cir.5/15/96), 676 So.2d 600, the plaintiff sued the DWF and an individual in Orleans Parish, alleging that his oyster beds were damaged by the individual’s boat and by the DWF failure to implement a protection plan to avoid such damage. The court held that venue was in Baton Rouge. There the dispute arose under La.R.S. 56:6(16), which provides that the commission, through its secretary, is mandated to “assist in protecting all lessees of private oyster bedding-grounds in the enjoyment of their rights.” In State, Dept. of Wildlife and Fisheries v. Vanacor, 94-689 (La.App. 5th Cir.12/28/94), 648 So.2d 1078, the defendant was unsuccessful in combining his challenge to a departmental regulation regarding the legal size of catfish with a criminal case against him for disregarding the regulation. There is no question that, in all of these cases, the actions arose from DWF’s statutory rights over oyster beds, the leases awarded to the oystermen, or over a specific written regulation. The facts here are dissimilar. In this case, there has been no determination that the Defendant has the right to manage the disputed property.
LThe DWF contends that the action it seeks to take in this case involves an administrative action under R.S. 56:7. Plaintiffs disagree, arguing that their demand or action is based on its allegations that such an action is the DWF’s “policy,” and that the removal of the camps is not a rule, regulation, or action within the meaning of the statute. They contend that R.S. 56:2(C) states that no action can be taken by the DWF without a vote at a duly constituted meeting and included in the minutes of that meeting. Further, Plaintiffs contend that the DWF has failed to show the existence of an official policy that would support their position, and even if it did so, the property does not belong to it. Thus, it has no right to make that demand under any circumstance.
La.R.S. 56:2 provides:
A. The commission shall have general control, management, supervision, and direction of the Louisiana Wildlife and Fisheries Commission. The commission is a policy-making and budgetary-control board, with no administrative functions. The commission shall have sole authority to establish definite management programs and policies and to approve and accept all contracts at its discretion. It shall make such studies and investigations as it thinks necessary. It shall formulate the policies and shall determine the wisdom and efficacy of the policies, plans, rules, regulations and proceedings of the commission.
B. No appointed member of the commission may prescribe or direct the conduct of the commission or the action of the director or any subordinate member thereof in any matter or case unless first authorized by the board in a meeting open to the public.
C. The commission shall not take any action except by vote in meeting assembled, all actions shall be included in the minutes....
Plaintiffs assert that there is no evidence in this case that the demand made on the Plaintiffs to remove the camps, even if the DWF has the right to make the demand, is a policy duly established by the DWF in a meeting, adopted by appropriate vote and recorded and written in the minutes of that meeting. In fact, |7the only “evidence” of such a policy are statements in letters to the hunting clubs informing them that they must remove the camps because it is the policy of the Defendant to prohibit buildings on property they manage. R.S. 56:7 establishes venue only in a certain class of suits, those in *1233 which a plaintiff seeks to test the legality of a rule, regulation, or action that was adopted by a vote of the DWF and recorded in the minutes and which relates to action by the DWF over property to which it has ownership rights, or things (animals, fowl, fish, etc.) that it manages pursuant by statute. Here, the ownership rights over the property are in dispute. This suit for declaratory judgment seeks to have the trial court make that determination. If the DWF is determined herein to own the rights to the disputed land, giving it the right to demand removal of the hunting camps, every subsequent suit related to its actions taken in reference to the disputed property must be brought in Baton Rouge. Until then, R.S. 56:7 does not apply to this suit.[3]
The DWF next argues that because it is a state agency, R.S. 13:5104(A) requires this suit to be brought in Baton Rouge. La.R.S. 13:5104 provides in part:
A. All suits filed against the state of Louisiana or any state agency may be instituted before the district court of the judicial district in which the state capitol is located or in the district court having jurisdiction in the parish in which the cause of action arises.... [Emphasis added]
This venue provision depends upon where the cause of action arises. The DWF argues that the cause of action arises in Baton Rouge because the donation of the land was accepted there and the two letters sent to the hunting clubs were administrative • actions initiated in Baton Rouge. The Plaintiffs respond that the cause of action arose in the Parish. | sThey argue that the donation of the servitude in 1952 occurred in the Parish and the immovable property is located in the Parish. They point out that the letters were sent to Plaintiffs, whose offices and domiciles are also in the Parish.
In Ehlinger & Associates v. State ex rel. Div. of Admin., Dept, of Facility Planning and Control, 01-52 (La.App. 5th Cir.5/30/01), 788 So.2d 644, 646, we determined that a cause of action arises in the place where the operative facts occurred which support plaintiffs entitlement to recovery, citing Avenal v. State, 95-836 (La.App. 4th Cir.11/30/95), 668 So.2d 1150. In this case, the operative facts are the execution of the servitude agreement, which occurred in the Parish, and the location of the disputed property, also in the Parish. Thus, we find that La.R.S.13:5104 is inapplicable.
La.C.C.P. art. 80 states that a dispute over real property is properly brought in the parish where the property is located. A personal or predial servitude is a form of real property. La.C.C. art. 645, La.C.C. art. 649. The servitude in this case is a personal servitude of right of use (see La.C.C. art. 639). Thus, we find that since no other venue provision supercedes C.C.P. art. 80 in this case, the trial judge did not err in denying the exception of improper venue and applying venue under C.C.P. art. 80.
Finally, we note that the issue of sovereign immunity does not apply to bar the action by the Plaintiffs and that the Plaintiffs were not required to seek the *1234 approval of the legislature before filing suit. The legislation creating the DWF specifically provides that it shall be a body corporate with the power to sue and be sued. La.R.S. 36:602(A). Furthermore, under La.R.S. 56.5, the commission, through its director, may sue and be sued.
Accordingly, the judgment of the trial judge is hereby affirmed.
AFFIRMED.

. The hunting clubs are: Frisco Hunting Club, represented by Dave J. Duke, Tattoon's Hunting Club, represented by Lawrence Duhe, Jr., St. John Hunting Club, represented by Davis R. Madere, Reserve Hunting and Fishing Club, represented by Roland Scion-eaux, Dirty Dozen Camp, represented by Terry E. Montz, and Reserve Gun and Rod Club, represented by Ricky Jacob.

. DWF filed for supervisory writs relative to the continuance of the TRO, which this Court granted due to the appeal that was pending. The Louisiana Supreme Court reversed our ruling on the writ and maintained the TRO. Following the action by the Louisiana Supreme Court, we granted an expedited appeal on the venue question.

. We note the cases cited by Plaintiffs holding that not all actions are subject to venue under R.S. 56:2: See: Williams v. Department of Wildlife and Fisheries, 95-2456 (La.App. 1st Cir. 11/20/96, 684 So.2d 1018) [tort], Hebert v. Department of Wildlife and Fisheries, 21,949 (La.App. 2nd Cir.12/5/90), 571 So.2d 690 [tort], Louisiana Farms v. Department of Wildlife and Fisheries, 95-845 (La.App. 3rd Cir. 10/9/96), 685 So.2d 1086 [wrongful seizure of property.]