# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #063

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **9th day of December, 2014**, are as follows:

**BY GUIDRY, J.**:

2014-C -0664      CANAL/CLAIBORNE, LIMITED v. STONEHEDGE DEVELOPMENT, LLC (Parish of Jefferson)

Accordingly, we conclude the trial court was without subject matter jurisdiction to entertain the plaintiff's claim for enrichment without cause and dismiss that claim with prejudice. REVERSED AND REMANDED TO THE DISTRICT.

WEIMER, J., concurs in part and dissents in part.
HUGHES, J., concurs in part and dissents in part for the reasons assigned by Justice Weimer.

SUPREME COURT OF LOUISIANA

No. 2014-C-0664

CANAL/CLAIBORNE, LIMITED

VERSUS

STONEHEDGE DEVELOPMENT, LLC

ON WRIT OF CERTIORARI TO THE COURT OF APPEAL
FIFTH CIRCUIT, PARISH OF JEFFERSON

**GUIDRY, Justice**

The Louisiana Constitution of 1974 provides for the waiver of sovereign immunity from suits in contract or tort against the state, a state agency, or a political subdivision. La. Const. art. XII, Sect. 10(A). In all "other suits against the state, a state agency, or a political subdivision," the legislature "may authorize" such suits by a "measure . . . waiv[ing] immunity from suit and liability." La. Const. art. XII, Sect. 10(B). Following Hurricane Katrina, the defendant state agency for a period of time failed to remove its partially damaged movable property from the premises of the plaintiff's building. During this time, the defendant state agency also failed to remit rental payments to plaintiff's lessee, who had in turn subleased the premises to the defendant state agency. The plaintiff sought remuneration for lost rental income. The issue presented in this case is whether the plaintiff's quasi-contractual claim of unjust enrichment, based on the lost rental income, falls within the scope of that waiver of sovereign immunity. For the reasons set forth below, we find the plaintiff's unjust enrichment claim does not fall within the scope of the waiver of sovereign immunity in contract or tort. We also find the plaintiff's suit asserting a claim of unjust enrichment has not

been otherwise permitted by the legislature in a "measure authorizing … immunity from suit and liability."

FACTS and PROCEDURAL HISTORY

Canal/Claiborne, Limited (hereinafter "Canal/Claiborne") is the owner of property located at 1661 Canal Street in New Orleans. In January 1995, Canal/Claiborne entered into a lease with Stonehedge Development, L.L.C. (hereinafter "Stonehedge"). Stonehedge, in the business of leasing properties to governmental entities, entered into a sublease in June 1995 with the State of Louisiana, Department of Children and Family Services (hereinafter "Department"). The Department occupied the premises, remitting monthly rent payments of about $53,000.00 to Stonehedge, which in turn remitted monthly payments of about $36,000.00 to Canal/Claiborne until Hurricane Katrina struck the city in 2005.

The premises were significantly damaged, rendering the building uninhabitable. Canal/Claiborne repaired the building and reopened it in November 2005, except those areas occupied by the Department, which had initially not allowed removal of its damaged furniture, supplies, and sensitive files. Canal/Claiborne continued to invoice Stonehedge for the monthly rentals as they accrued. By December 2005, the Department had authorized Canal/Claiborne to clean out the Department's property from the first floor, and by March 2006, the Department had removed a major portion of its property on the second floor. The Department made no rental payments from November 2005 until the middle of June 2006, when the Department entered into an emergency procurement lease directly with Canal/Claiborne and began remitting payments to Canal/Claiborne.

Canal/Claiborne filed a petition for sums due under the lease in January 2006, alleging Stonehedge was in default under the lease and that the Department,

by not removing its property, was continuing to occupy the building. In July 2007, Stonehedge filed a third party demand against the Department, incorporating all of the allegations contained in the original petition. In June 2010, Canal/Claiborne amended and supplemented its original petition to add a direct claim against the Department, asserting the terms of the sublease between Stonehedge and the Department and seeking additional rentals or other damages without pleading a specific legal theory. The Department filed a dilatory exception of prematurity asserting Canal/Claiborne "failed to adhere to La. R.S. 39:1673 and acquire a decision from the chief procurement officer of the Department of Administration prior to the commencement of an action in court . . .."[1] The trial court overruled the exception on two grounds: Canal/Claiborne did not directly contract with the Department and the Department had effectively waived the administrative remedy when it voluntarily withdrew a previous dilatory exception against Stonehedge and by its ongoing participation in the litigation.

Eventually the matter proceeded to a bench trial in October 2012 against the Department only, Canal/Claiborne having settled with Stonehedge. In November 2012, the trial court entered judgment in favor of Canal/Claiborne and against the Department, awarding $188,066.24 in damages with legal interest from the date of judicial demand. The judgment did not expressly state a legal theory underlying the Department's liability, merely awarding "damages suffered . . . as a result of the . . . occupancy of 1661 Canal Street . . .."

The court of appeal affirmed the trial court's judgment, finding no error in the denial of the Department's exception of prematurity under La. Rev. Stat. 39:1673. The appellate court found no error in the trial court's conclusion that

---

[1] The Louisiana Procurement Code provides for an administrative procedure to resolve "controversies between the state and a contractor and which arise under or by virtue of a contract between them." La. Rev. Stat. 39:1673(A).

3

Canal/Claiborne was not a contractor with the Department and that Canal/Claiborne's suit "is for unjust enrichment or damages for trespass." *Canal/Claiborne, Limited v. Stonehedge Development, LLC*, 13-0641 (La. App. 5 Cir. 2/26/14), 136 So.3d 326, 328.

The Department applied for writs of review in this court and, at the same time, filed a declinatory exception of lack of subject matter jurisdiction and a peremptory exception of prescription. The Department has for the first time in any court raised the issue of subject matter jurisdiction, arguing that Canal/Claiborne has asserted a quasi-contractual unjust enrichment claim against the Department for storing items on Canal/Claiborne's property for a certain period of time. The Department asserts that, under La. Const. art. XII, Sect. 10(A), "[n]either the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to a person or property." Because sovereign immunity has not been waived as to suits asserting claims for unjust enrichment, and because Canal/Claiborne's claim is a quasi-contractual claim for unjust enrichment, the Department contends the judgment of the trial court is a nullity under La. Code Civ. Proc. art. 2002(A)(3) because the court lacked jurisdiction over the subject matter of the claim.

We granted the writ application to determine whether the plaintiff's unjust enrichment claim falls within the scope of the waiver of immunity "from suit and liability in contract" for purposes of La. Const. art. XII, Sect. 10. *Canal/Claiborne, Limited v. Stonehedge Development, LLC*, 14-0664 (La. 06/20/14), ___ So.3d ___.

ANALYSIS

Although not raised in the lower courts, we find the Department's exception of subject matter jurisdiction is properly raised in this court. Louisiana courts have

recognized that such an exception may be raised at any stage of the proceedings, including at the appellate level. *Piper v. Olinde Hardware & Supply Co.*, 288 So.2d 626 (La. 1974); *Colaccurcio v. Ledet*, 94-1798 (La. App. 4 Cir. 9/28/95), 662 So.2d 65. The jurisdiction of a court over the subject matter of an action or proceeding cannot be conferred by consent of the parties. La. Code Civ. Proc. art. 3. Thus, a judgment rendered by a court with no jurisdiction over the subject matter of the action or proceeding is void. *Id.*

Turning to the merits of the exception, we must determine whether the plaintiff's alleged quasi-contractual claim of unjust enrichment falls within the scope of the waiver of immunity set forth in La. Const. art. XII, Sect. 10(A). For the reasons set forth below, we find that it does not.

The starting point in the interpretation of constitutional provisions is the language of the Constitution itself. *Louisiana Mun. Ass'n v. State*, 00-0374, p. 5 (La. 10/6/00), 773 So.2d 663, 667. When a constitutional provision is plain and unambiguous, and its application does not lead to absurd consequences, its language must be given effect. *Id.* at pp. 5-6, 773 So.2d at 667. The Louisiana Constitution of 1974 provides, in Article XII, Section 10(A): "Neither the state, a state agency, nor a political subdivision shall be immune from suit and liability in contract or for injury to person or property." This court has recognized Section 10(A) as an "unequivocal, self-executing waiver of sovereign immunity as to suit and liability in contract and tort cases." *Fulmer v. State, Dept. of Wildlife and Fisheries*, 10-2779 (La. 7/1/11), 68 So.3d 499, 503 (quoting *Jacobs v. City of Bunkie*, 98-2510 (La.5/18/99), 737 So.2d 14, 22). This language is clear and unambiguous, and we need not rely on the constitutional debates to infer any qualifications in that waiver. *See Chamberlain v. State of Louisiana, Dept. of Transp. and Dev't*, 93-472 (La. 9/3/93), 624 So.2d 874.

5

In this case, the plaintiff's claim against the Department is in part, at least, one for enrichment without cause, *see* La. Civ. Code art. 2298, as there exists no contract between Canal/Claiborne and the Department. Both the trial court and the court of appeal concluded there was no contract between the parties, and Canal/Claiborne has conceded it was not a contractor with the Department and, thus, not bound by the administrative procedures set forth in La. Rev. Stat. 39:1673. In this case, the Department entered into a sublease with Stonehedge, the original lessee. A sublease is an agreement in which the original lessee leases to a third party, the sublessee, all or part of the property leased to the original lessee by the owner of the property. When Stonehedge and the Department entered into a sublease of the Canal Street property, a new contract came into existence that was separate and distinct from the original lease between the sublessor, Stonehedge, and the owner of the property, Canal/Claiborne. *See Bourgeois, Dupuis, Wright & Cohen v. Hayes*, 457 So.2d 231 (La. App. 3rd Cir.), *writ denied*, 461 So.3d 315 (La. 1984). Although Canal/Claiborne asserts the lease and sublease effectively constituted "a contractual arrangement" through which it received a "pass-through portion" of the monthly rentals the Department was obligated to pay Stonehedge, we conclude there was no privity of contract under the sublease between Canal/Claiborne as the owner of the property and the Department as the sublessee. *See Id.*

Nor do we find any merit to Canal/Claiborne's assertion that it was a third-party beneficiary of the sublease between Stonehedge and the Department and, therefore, the Department is liable in contract to Canal/Claiborne. Under a *stipulation pour autrui*, a contracting party may stipulate a benefit for a third person, who must then manifest an intention to avail himself of the benefit. La. Civ. Code art. 1978. This court has identified three criteria for determining

6

whether the contracting parties have provided a benefit to a third party: 1) the stipulation for a third party is manifestly clear; 2) there is certainty as to the benefit provided the third party; and 3) the benefit is not a mere incident of the contract between the promisor and the promissee. *Joseph v. Hospital Serv. Dist. No. 2 of Parish of St. Mary*, 05-2364, pp. 8-9 (La. 10/15/06), 939 So.2d 1206, 1212. Although the original lease between Canal/Claiborne and Stonehedge was predicated on Stonehedge subleasing the property to a governmental entity, the sublease between Stonehedge and the Department makes no reference whatsoever to Canal/Claiborne, whether as the property owner, the original lessor, or as a third party beneficiary of the sublease. The most basic requirement of a *stipulation pour autrui* is that the contract in question manifest a clear intention to benefit the third party; absent such a clear manifestation, a party claiming to be a third party beneficiary cannot meet his burden of proof. *Joseph*, p. 9, 939 So.2d at 1212. A *stipulation pour autrui* is never presumed. *Id.* Here, Canal/Claiborne argues the benefit provided to it was "a specified amount of the monthly rentals – the amount [the Department] paid less Stonehedge's 'cut.'" Canal/Claiborne further argues that it not only accepted the benefit when it received these rental payments, but it also accepted the legal obligations of lessor that accompanied that benefit. Despite such arguments, Canal/Claiborne has failed to point to any actual provision in the sublease that manifests any specific benefit to a third person, namely Canal/Claiborne. Furthermore, there is no certainty as to any benefit to Canal/Claiborne from the sublease and any benefit inuring to Canal/Claiborne is merely incidental to the sublease between Stonehedge and the Department. As this court has noted, "'not every promise, performance of which may be advantageous to a third person, will create in him an actionable right.'" *Joseph*, pp. 9-10, 939 So.2d at 1212-13 (quoting Smith, J. Denson, *Third Party Beneficiaries in*

7

*Louisiana: The Stipulation Pour Autrui*, 11 Tul. L.Rev. 18, 28 (1936)). We conclude Canal/Claiborne had no rights under the sublease as a beneficiary thereto, and, therefore, the Department was not liable in contract to Canal/Claiborne pursuant to the sublease. *See* La. Civ. Code arts. 1978 et seq.

We conclude that Canal/Claiborne has failed to identify a claim against the Department sounding in contract that would fall within the scope of the waiver of immunity found in La. Const. art. XII, Sect. 10(A). That a claim of enrichment without cause under La. Civ. Code art. 2298 is a quasi-contractual claim is well-settled in our jurisprudence. "There is a general concept of quasi contractual obligations; it is a concept based upon the principle that where there is an unjust enrichment of one at the expense or impoverishment of another, then the value of that enrichment or else, in some cases, the amount of the impoverishment must be restituted." *Minyard v. Curtis Products, Inc.*, 251 La. 624, 205 So.2d 422, 432 (La. 1967) (citing Planiol, *Traité Élémentaire De Droit Civil*, T. 2, no. 812, no. 813 (8th ed. 1939)). As we have noted, the language of the waiver of immunity from suits in contract is clear and unambiguous. When a constitutional provision is clear and unambiguous and its application does not lead to absurd consequences, it must be applied as written and no further interpretation need be made in search of the intent of the drafters or the electorate. *See* La. Civ. Code art. 9; *Louisiana Mun. Ass'n*, pp. 5-6, 773 So.2d at 667; *Chamberlain*, 624 So.2d at 886. We find no absurd consequences in concluding this provision does not include a waiver of immunity for quasi-contractual claims. Although Canal/Claiborne points to the unique circumstances of this case, both in light of the devastation of Hurricane Katrina and the Department's conduct before and after the commencement of litigation, Canal/Claiborne had remedies under its lease with Stonehedge and remedies in tort

8

against the Department.[2]  Thus, we find the unjust enrichment claim asserted by Canal/Claiborne does not fall within the scope of the waiver of sovereign immunity from suits in contract found in La. Const. art. XII, Sect. 10(A). Accordingly, unless otherwise authorized by the legislature, the trial court was without subject matter jurisdiction to entertain Canal/Claiborne's unjust enrichment claim against the Department.

Turning to La. Const. art. XII, Sect. 10(B), we find the plaintiff's suit asserting a quasi-contractual claim of unjust enrichment was not otherwise authorized against the Department pursuant to La. Rev. Stat. 36:471.  La. Const. art. XII, Sect. 10(B), entitled "Waiver In Other Suits," provides as follows:

> The legislature may authorize other suits against the state, a state agency, or a political subdivision.  A measure authorizing suit shall waive immunity from suit and liability.

Canal/Claiborne argues that La. Rev. Stat. 36:471, enacted in 1988 under the 1974 Constitution, created the Department of Social Services, the predecessor agency to the Department of Children and Family Services, as "a body corporate with the power to sue and be sued."  La. Rev. Stat. 36:471(A).[3]  Canal/Claiborne maintains that this statute falls directly within the ambit of Art. XII, Sect. 10(B) and that the clause "to sue and be sued" found in La. Rev. Stat. 36:471(A) amounts to a general waiver of immunity from suit and liability without regard to any type of claim.

Whether the power "to sue and be sued" language found in La. Rev. Stat. 36:471(A) constitutes a general waiver of sovereign immunity within the context

---

[2] Although the lower court and the Department have used the term "trespass" to describe the Department's alleged occupancy of Canal/Claiborne's property, our civil law traditions fully safeguard the rights of owners and possessors of immovable property. *MCI Communications Services, Inc. v. Hagan*, 11-1039 (La. 10/25/11), 74 So.3d 1148, 1156 n. 12 (citing 2 A.N. Yiannopoulos, Louisiana Civil Law Treatise; Property, § 293, p. 579 (4th ed.  2001).

[3] By Act No. 877 of 2010, Sect. 3, the legislature directed the Louisiana State Law Institute to change all references to the Department of Social Services to the Department of Children and Family Services.

of the 1974 Constitution and Art. XII, Sect. 10(B) is a *res nova* issue in our courts. We hold, however, that this language without more does not constitute a blanket waiver of immunity from suit of any kind. The history of sovereign immunity in Louisiana was well explained in *Chamberlain,* 624 So.2d at 880-81. We discern from this history that Louisiana courts have construed the "sue and be sued" language as granting a waiver of immunity not only from suit but also from substantive liability. Canal/Claiborne urges that the power "to sue and be sued" language now operates as a general waiver of immunity from all types of claims, regardless of the specific provisions in the 1974 Constitution limiting the waiver of immunity to contract and tort claims.

The 1921 constitutional provision originally vested in the legislature the discretionary power from time to time to consent to suit. In 1946, the provision was amended to address the enforcement of judgments. In 1959, this court construed the provision as it then existed as giving the legislature the power to waive the traditional sovereign immunity from suit, but not the immunity from substantive tort liability, effectively reducing the legislature's waiver of immunity to a mere invitation "to visit the courthouse" to file suit and to be thrown out shortly thereafter on an exception of no cause of action. *See Duree v. Maryland Casualty Co.*, 238 La. 166, 114 So.2d 594 (1959); *Stephens v. Natchitoches School Board*, 238 La. 388, 115 So.2d 793 (1959). This construction prompted a 1960 constitutional amendment to add the liability language to the 1921 Constitution, assuring that any waiver of immunity would be both from suit and from liability. As amended by Act 621 of 1960, Art. III, Sect. 35 of the 1921 Constitution provided in part as follows:

> The Legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, municipalities, political subdivisions, public boards, institutions, departments, commissions, districts, corporations,

agencies and authorities and other public or governmental bodies; and each authorization by the Legislature for suit against the State or other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes, as of and from the date thereof, as a waiver of the defendant's immunity both from suit and from liability. The Legislature shall, by special or general laws or resolutions, prescribe the procedural rules, including rules of venue and service of process, to govern suits against the state and other public bodies; the procedure in such suits, in the absence of applicable procedural rules promulgated by the Legislature, to be the same as in suits between private litigants. No judgment against the state or any other public body shall be exigible, payable or paid except out of funds appropriated for payment thereof. …

Commenting on the 1960 amendment to Art. III, Sect. 35 of the 1921 Constitution, this court stated in *Hamilton v. City of Shreveport*, 247 La. 784, 174 So.2d 529, 530 (1965):

> [T]he Legislature of 1960 in adopting the aforementioned proposed amendment did so with the express purpose of nullifying the effect of [*Duree* and *Stephens*, a pair of] decisions of this court ... [which held] that whenever the Legislature authorized suit under Section 35 of Article 3 of the Constitution of 1921, as amended pursuant to Act No. 385 of 1946, it simply waived the traditional immunity of the state and its subdivisions from suit and did not constitute a waiver of the state or its agencies from liability for the negligence of one of its employees in the exercise of a governmental function.

In *Hamilton*, however, the court was faced with the issue of whether the "sue and be sued" language constituted a waiver of immunity from suit and liability only for a government entity's tort actions resulting from its proprietary activities and not the entity's actions founded on the tortious conduct of its officers and employees when functioning in a governmental capacity. The *Hamilton* court rejected that contention, declining to limit the waiver of immunity. 247 La. at 792, 174 So.2d at 532. The *Hamilton* court concluded that each legislative authorization of suit was to be construed "to be and shall be effective and valid for all purposes . . . a waiver of the defendant's immunity from both suit and from liability." *Id.* at 532; *see*

*also Board of Comm'rs of Port of New Orleans v. Splendour Shipping & Enterprises Co.*, 273 So.2d 19, 24-25 (La. 1973).

In *Herrin v. Perry*, 254 La. 933, 228 So.2d 649, this court applied *Hamilton* to find a general waiver of *tort* liability, holding that the "'sue and be sued' provision in the charter or organic act of any body enumerated in the 1960 amendment to Art. III, Sect. 35 of the 1921 Constitution must be construed as a general waiver of immunity from suit." 228 So.2d at 656. The *Herrin* court thus rejected the argument of the Department of Highways that the 1960 amendment to the 1921 Constitution was not intended to cause all prior acts creating governmental agencies and giving them the authority "to sue and be sued" to be considered as general waivers of immunity from tort liability. The *Herrin* court was not confronted with the scope of the waiver of immunity outside of the tort context.

In *Splendour*, *supra*, decided in 1973 while the constitutional convention was under way, this court found that in Louisiana sovereign or governmental immunity was a judicially-created doctrine, which was outmoded and which was inconsistent with the state's policy of requiring that state agencies either "act responsibly, or be subject to answer in court." 273 So.2d at 26. Thus, even in the absence of any legislative authority to "sue and be sued," this court held that state agencies were not immune from suit in tort, abrogating sovereign immunity in tort cases. *Chamberlain*, 624 So.2d at 881.

The 1974 Constitution continued the *Splendour* court's broad abrogation of sovereign immunity in tort, and created a similarly broad waiver of immunity for suits in contract; however, the 1974 Constitution notably continued the requirement of legislative pre-authorization for suits other than those in contract or for injury to person or property. The 1974 Constitution, as this court explained in

12

*Chamberlain*, now contains in Article XII, Section 10(A) an absolute prohibition against immunity from suit and liability in contract and tort suits, while Section 10(B) continues the requirement that in other suits a legislative waiver, when given, must be both from suit and from liability. 624 So.2d at 881 (citing Hargrave, *"Statutory" and "Hortatory" Provisions of the Louisiana Constitution of 1974*, 43 La. L. Rev. 647, 652-53 (1983)). In *Chamberlain*, we recognized that Section 10(B), because it continues the legislative consent method for "other suits," retains "some vestige of sovereign immunity as a viable doctrine." 624 So.2d at 882 (citing *Burmaster v. Gravity Drainage Dist. No. 2 of Parish of St. Charles*, 602 So.2d 1045 (La. App. 5th Cir.), *writ denied*, 608 So.2d 167 (La. 1992) (applying Sect. 10(B) to find governmental entity possessed sovereign immunity in suit not involving "injury or property" where legislative consent had not been obtained); *Two O'Clock Bayou Land Co. v. State of Louisiana*, 415 So.2d 990, 992 (La. App. 3rd Cir. 1982) (same)).

The cases relied upon by the plaintiff do not support its assertion that, when the legislature imbues an agency with the "power to sue and be sued," the legislature has intentionally passed a "measure" authorizing all suits against a state agency, including those other than a claim in contract or for injury to person or property, within the meaning of La. Const. art. XII, Sect. 10(B). In *James v. Charity Hosp.*, 398 So.2d 622, 623 (La. App. 1st Cir. 1981), the plaintiffs sought damages for the wrongful death of their child, filing suit in Iberville Parish in the Eighteenth Judicial District Court against Charity Hospital of New Orleans and the unknown maker of a heat lamp, to which Charity Hospital filed an exception of improper venue. The court interpreted La. Rev. Stat. 46:759, which provides as follows: "The Charity Hospital at New Orleans may sue and be sued, in all affairs and actions whatever, before any of the courts of the state." The plaintiffs

contended the phrase "before any court of this state" constituted an exception to the general rules of venue. Charity Hospital argued the intent of the legislation was simply to waive the sovereign immunity that had prevented individuals from suing the hospital. The appellate court found the statute was intended to waive sovereign immunity rather than constitute an exception to the general venue provisions. 398 So.2d at 623. Notably, the court was not called upon to determine the scope of the waiver of immunity in the context of La. Const. art. XII, Sect. 10(B), as the underlying claim was for injury to a person.

Similarly, *Willis v. Dept. of Culture, Recreation, and Tourism*, 525 So.2d 1162, 1164 (La. App. 2nd Cir. 1988), does not stand for the general waiver proposition asserted by Canal/Claiborne; indeed, the court's holding tends to counter that proposition. In *Willis*, the plaintiff filed a petitory action against the Department of Culture, Recreation, and Tourism, State of Louisiana, alleging that he was the owner of a tract of land in Webster Parish and that the Department had taken possession of a portion of his land by erecting a fence. The Department filed an exception of sovereign immunity asserting the State of Louisiana may not be sued without legislative consent except where the cause of action is in contract or tort in accordance with La. Const. art. XII, Sect. 10(A). The court of appeal held that the Department was immune from suit. The court first found the plaintiff's suit, despite an allegation of trespass, was a petitory action, rather than a claim in contract or tort, and thus fell within the classification of "other suits" found in La. Const. art. XII, Sect. 10(B) requiring legislative authorization prior to institution of suit. The court rejected the plaintiff's reliance on the "sue and be sued" language found in the statute creating the Department of Culture, Recreation and Tourism, La. Rev. Stat. 36:201. The court noted the legislature did not transfer title to lands such as lake bottoms to the Department in the legislation creating the Department.

14

Accordingly, the court held that, "[i]n granting the power to sue and be sued, the legislature only waived the state's immunity in the areas within the ambit of the department's administration … and did not serve as a measure waiving immunity for the determination of the ownership of lands claimed by the state." 535 So.2d at 1164.

Canal/Claiborne lastly cites *State ex rel. Dept. of Highways v. City of Pineville*, 403 So.2d 49 (La. 1981), arguing that, if a state agency, having the power to sue and be sued, can assert a claim founded on the theory of unjust enrichment, or some other form of quasi-contract, then that agency is surely subject to suit for a quasi-contractual claim. *City of Pineville*, however, did not address the intent of the meaning of the "power to sue and be sued" language within the context of La. Const. art. XII, Sect. 10(B). This court in *City of Pineville*, was instead called upon to interpret a provision of the 1921 Constitution, Art. XIX, Sect. 16, which provided that "[p]rescription shall not run against the State in any civil matter, unless otherwise provided in this Constitution or expressly by law." An identical provision is found in La. Const. art. XII, Sect. 13 (1974). The court had to determine whether the Department of Transportation and Development, the successor to the Department of Highways, which was established as a "body politic and corporate" and given the power "to sue and be sued" in La. Rev. Stats. 48:13 and 48:22, could be characterized as the State of Louisiana and, thus, could claim constitutional immunity from prescription. This court held that the "State," for the purposes of the constitutional immunity from prescription, does not include a state agency that is a body corporate with the power to sue and be sued and, when vested with a cause of action, is the sole party capable of asserting it. 403 So.2d at 52. The court reasoned, "[r]egardless of its status as an instrumentality of the state, such an agency remains a distinct legal

entity subject to claims of prescription except where the law provides otherwise." *Id.* Thus, the court concluded the department could not claim constitutional immunity. Although the court in *City of Pineville* did, after finding the agreement between the city and the department was *void ab initio*, ultimately acknowledge the department had plausibly asserted in the alternative a cause of action founded upon the theory of unjust enrichment, the court was not confronted with the issue of whether such a claim could be asserted against the department within the meaning of Art. XII, Sect. 10 of the 1974 Constitution without legislative authorization prior to the imposition of suit.

Though not cited by the plaintiff, we note the appellate court in *St. John the Baptist Parish v. State ex rel. Dept. of Wildlife and Fisheries,* 02-612 (La. App. 5 Cir. 10/16/02), 828 So.2d 1229, 1230-1231, ostensibly held the "sue and be sued language" found in the Department of Wildlife and Fisheries statutes, La. Rev. Stat. 36:602(A), functioned as a general waiver of sovereign immunity. However, the appellate court was called upon only to determine the merits of a declinatory exception of improper venue filed by the Department, not an exception of lack of subject matter jurisdiction. In that case, the landowner in 1952 had donated a servitude to St. John the Baptist Parish for construction of a drainage canal. At the time, the landowner had leased to various hunting clubs a number of camps, constructed by the clubs at their expense, that were located wholly or partially within the parish's servitude. In 2001, the landowner donated the property to the Department to be used as a wildlife preserve. After being informed by the Department that they would have to remove the hunting camp buildings located on the property pursuant to the Department's policy of not allowing overnight camping, the hunting clubs donated the camps to the parish in exchange for the parish's agreement to lease the camps back to the clubs, albeit with certain

conditions. The parish and the hunting clubs then filed suit in St. John the Baptist Parish against the Department seeking a declaratory judgment regarding ownership of the camps and the property, as well as restraining orders preventing the Department from tearing down the buildings. The Department objected to venue in the parish, arguing venue was more properly located in Baton Rouge.

The appellate court affirmed the trial court's denial of the venue exception. The appellate court first found that La. Rev. Stat. 56:7, which requires a challenge to the properly established policies of the Department of Wildlife and Fisheries Commission must be brought in the Commission's domicile, did not apply at this point in the litigation because the ownership of the property had not yet been determined. The appellate court next found La. Code Civ. Proc. art. 80 controlled, because Art. 80 provides that a dispute over real property, which would include a personal servitude, is properly brought in the parish where the property is located. Finally, the appellate court rejected the Department's argument La. Code Civ. Proc. art. 80 did not apply because the hunting clubs and the Parish had failed to obtain authorization from the legislature before filing suit. The court cited the "sue and be sued" language in La. Rev. Stat. 36:602 to find that sovereign immunity did not bar the action and that the plaintiffs were not required to seek the approval of the legislature before filing suit. 828 So.2d at 1233-34.

Notably, the appellate court in *St. John the Baptist Parish* was not called upon to determine whether the plaintiffs' claims fell inside or outside the scope of the waiver of sovereign immunity in contract or for injury to person or property as set forth in Art. XII, Sect. 10(A) of the 1974 Constitution. Presumably the appellate court had determined the claims sounded in contract, as elsewhere the court noted the operative facts centered on the servitude agreement as well as the location of the property. 828 So.2d at 1233. The plaintiffs' claims logically

17

sounded in contract, as ownership of the camps and the property would necessarily have been determined by the terms of the landowner's donations to the parish and the Department. But perhaps more pertinent to our case today, the appellate court in *St. John the Baptist Parish* made no determination that the plaintiffs' claims fell outside the scope of the waiver in La. Const. art. XII, Sect. 10(A), but the plaintiffs were otherwise authorized to bring suit against the Department under La. Const. art. XII, Sect. 10(B) by operation of the "sue and be sued" language in La. Rev. Stat. 36:602(A). The appellate court was not called upon to determine whether the language in La. Rev. Stat. 36:602(A) operated as a "measure" permitting suits against a state agency other than suits in contract or for injury to person or property within the meaning of La. Const. art. XII, Sect. 10(B). Thus, the appellate court's holding in *St. John the Baptist Parish* cannot be fairly interpreted to broadly hold that the "sue and be sued" language generally waives sovereign immunity beyond suit and liability in contract or tort. To the extent that it could, it is now overruled by today's decision in the present case.

We hold that the "power to sue and be sued" given a state agency by virtue of the statute creating that agency does not by itself effect a general waiver of immunity with regard to all suits within the meaning of Art. XII, Sect. 10(B), not just suits in contract or for injury to person or property for which immunity has been waived in Art. XII, Sect. 10(A). The "sue and be sued language," deliberately chosen by the legislature, serves an important function: it specifies that governmental units created under statute may be designated as legal entities distinct from the State for litigation purposes. *See City of Pineville*, 403 So.2d at 52. Here, the Department of Children and Family Services performs important public functions, and La. Rev. Stat. 36:471(A) enables the Department to bring suit in performance of its duties. Likewise, La. Rev. Stat. 36:471(A) allows the

18

Department to be sued as a separate legal entity for negligence or other tortious conduct, or for breach of contract, instead of the aggrieved party having to sue the entire State of Louisiana for redress.

We discern no indication that the legislature, by designating a state agency as a separate legal body with the power to sue and be sued, also meant to broadly waive immunity and liability from suit of any kind, particularly in light of the specifically articulated waiver of immunity for state agencies found in Art. XII, Sects. 10(A) and (B) in the 1974 Constitution, which retains sovereign immunity for suits other than those in contract or tort. *See Chamberlain*, 624 So.2d at 882. Canal/Claiborne has not directed us, nor have we found, any discussion in the debates of the drafters during the 1973 Constitutional Convention that would suggest the "power to sue and be sued" would be equivalent to a "measure" authorizing suits against the state agency other than a suit founded in contract or tort. Indeed, the drafters were well aware that, without prior legislative approval, an individual could not file suit against the state or a state agency, and thus they were doubtlessly aware of the scope of the waiver of immunity they would eventually approve in proposing Art. XII, Sect. 10 to the electorate. *See, e.g.*, Volume I, Official Journal of the Proceedings of the Constitutional Convention of 1973 of the State of Louisiana, (20th days proceedings), at 397-419 (July 26, 1973). It is within the province of the legislature to say whether establishing a state agency as a "body corporate with the power to sue and be sued" demonstrates an intent to broadly waive immunity from all suits based on any legal theory, as well as liability, within the meaning of Art. XII, Sect. 10(B). Absent any indication the legislature so intended, we decline to read the "power to sue and be sued" language found in La. Rev. Stat. 36:471 as purposefully granting a broad and general waiver of immunity from suit and liability in all suits, not only those in contract or for

injury to a person or property, absent prior authorization from the legislature in a "measure authorizing suit …." *See* La. Const. art. XII, Sect. 10(B).

CONCLUSION

To capsulize, we find the plaintiff's alleged quasi-contractual claim for unjust enrichment does not fall within the scope of the waiver of sovereign immunity from suit and liability in contract or for injury to person or property found in La. Const. Art. XII, Sect. 10(A).  Applying La. Const. art. XII, Sect. 10(B), we also find that, even though the Department of Children and Family Services was created by La. Rev. Stat. 36:471(A) as a "body corporate with the power to sue and be sued," this language by itself does not constitute a "measure authorizing" waiver of suit and liability in all claims other than suit in contract or for injury to person or property.  Therefore, the plaintiff's suit asserting a quasi-contractual claim of unjust enrichment has not otherwise been authorized by the legislature in a "measure authorizing … immunity from suit and liability." Accordingly, we conclude the trial court was without subject matter jurisdiction to entertain the plaintiff's claim for enrichment without cause and dismiss that claim with prejudice.[4]

**REVERSED AND REMANDED TO THE DISTRICT COURT**

---

[4] We decline to review the Department's peremptory exception of prescription.  Because the basis for the trial court's award was founded to some extent on the plaintiff's tort claim of "trespass," the Department's exception of prescription is more appropriately heard in that forum under the circumstances of this case.

SUPREME COURT OF LOUISIANA

NO. 2014-C-0664

CANAL/CLAIBORNE, LIMITED

VERSUS

STONEHEDGE DEVELOPMENT, LLC

*ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIFTH CIRCUIT, PARISH OF JEFFERSON*

**Weimer, J.**, concurring in part, dissenting in part.

I agree that the plaintiff's unjust enrichment claim brought against the State of Louisiana, Department of Children and Family Services, is a quasi-contractual claim. That unjust enrichment claim, therefore, is not authorized under La. Const. art. XII, § 10**(A)**, which the majority correctly notes waives sovereign immunity only for claims based on contract or tort. I respectfully disagree, however, with the majority that the plaintiff's claim has not been authorized under La. Const. art. XII, § 10**(B)**, when the legislature established the Department of Children and Family Services, as "a body corporate with the power to sue and be sued." La. R.S. 36:471(A).

Under La. Const. art. XII, § 10(B), for "other suits against the state, a state agency, or a political subdivision," the legislature "may authorize" such suits by a "measure ... waiv[ing] immunity from suit and liability." The legislature's designation of the Department of Children and Family Services as having "the power to sue and be sued" is a clear and unqualified waiver of immunity from suit and liability for all purposes.

The majority, however, attempts to restrict the "power to sue and be sued" language of La. R.S. 36:471(A) to only suits based in contract or tort. To impose

such a restriction on what is facially broad language, the majority turns to this court's prior opinion in **Chamberlain v. State, Dept. of Transp. and Dev't**, 93-472 (La. 9/3/93), 624 So.2d 874. In **Chamberlain**, the court noted that that Section 10(B), inasmuch as it requires the legislative consent for liability stemming from "other suits," retains "some vestige of sovereign immunity as a viable doctrine." *Id.*, 624 So.2d at 882. The majority, in the instant case, then traces the history of the sovereign immunity doctrine, finding that immunity still exists for suits besides tort or contract suits, and concludes that immunity bars plaintiff's quasi-contract suit. I respectfully suggest the majority errs.

In its historical narrative, the majority attempts to limit this court's decision in **Herrin v. Perry**, 254 La. 933, 228 So.2d 649 (1969). In **Herrin**, this court examined the effect of statutory language permitting the state Department of Transportation to "sue and be sued," and concluded the quoted language constituted a waiver of sovereign immunity. The **Herrin** court explained that "the 'sue and be sued' provision in the charter or organic act of any body enumerated in the 1960 Constitutional Amendment must be construed as a general waiver of immunity from suit." **Herrin** 228 So.2d at 656. The limitation the court presently places on **Herrin** is based on the fact that the "court was not confronted with the scope of the waiver of immunity outside of the tort context."

The distinction the majority now draws misses the point. The proper focus is on the effect of the legislature's choice to waive immunity when it employs the terms "sue and be sued." The alternative to language that waives immunity for any cause of action, would be to require the legislature to list every conceivable cause of action. Therefore, rather than accept that the legislature intended "sue and be sued" to cover every type of suit, the majority apparently reverts to a requirement that the legislature

2

employ "magic words" to specify the type of suit for which sovereign immunity has been waived. There is a general disfavor in the law to require the use of such "magic words," and it is unfitting for this court to foist such an encumbrance upon the legislature to list every type of suit for which immunity applies when the simple phrase "any and all suits" plainly suffices. See, e.g., **Harrah's Bossier City Inv. Co., LLC v. Bridges**, 09-1916, p. 17 (La. 5/11/10), 41 So.3d 438, 450 (ruling, in the context of tax exemptions established by the legislature: "There are no 'magic words' necessary to create an exemption or an exclusion; the determining factor is the effect of the statute: 'the words and form used legislatively in granting an exemption are not important if, in their essence, the Legislature creates an exemption.'"), *quoting* **Wooden v. Louisiana Tax Commission**, (La. 2/20/95), 650 So.2d 1157, 1161.

Also downplayed in the majority's historical narrative of sovereign immunity is that this court had concluded before **Herrin** that "sue and be sued" equates to a broad legislative waiver of sovereign immunity. That is, the majority cites **Hamilton v. City of Shreveport**, 247 La. 784, 174 So.2d 529, 530 (1965), and notes that the legislature's use of "sue and be sued" language was at issue. Further, the majority correctly recites that this court ruled that the "sue and be sued" language was "effective and valid for all purposes … a waiver of the defendant's immunity from both suit and from liability." (Emphasis added.) However, the majority attempts to distance itself from the ruling in **Hamilton** that the waiver was "valid for all purposes." **Canal/Claiborne, Ltd v. Stonehedge Development, LLC**, No. 14-0664, slip op. at 11 (La. Dec. ___, 2014).

To place distance between the instant case and **Hamilton**, the majority notes that **Hamilton** dealt with a tort suit. At the time **Hamilton** was decided, however, the constitution lacked the present waiver found in Section 10(A), expressly waiving

3

immunity in contract and tort. Therefore, the only significant point to be drawn from **Hamilton** is not one of limitation, but rather that this court gave the "sue and be sued" language an expansive meaning: "effective and valid for <u>all</u> purposes." See **Hamilton**, 174 So.2d at 530 (emphasis added).

The majority never explains why the broad "sue and be sued" language, which must be assumed to have been deliberately chosen by the legislature,[1] is insufficient to serve as a waiver of non-tort/non-contract suits under Section 10(B). Even more instructive than this court's ruling in **Hamilton** are the following principles, which compel the conclusion that the legislature's use of "sue and be sued" language reflects a waiver under Section 10(B).

One of the governing principles is found in the **Chamberlain** opinion, on which the majority relies for its historical narrative. In **Chamberlain**, 624 So.2d at 879, this court explained: "Unlike the federal constitution which grants powers, the Louisiana constitution, in general, limits powers. **Polk v. Edwards**, 1993 WL 364714, n.4 (La. 1993) (No. 93-CA-0362) (noting that "state constitutions typically contain limits on governmental authority rather than grants of power as with the federal constitution")." Under this principle, unless restricted by the constitution, the legislature is free to waive immunity for all causes of action.

Another longstanding principle indicates that we are to look for a restriction in the constitution by using "the same general rules used in interpreting laws and written instruments." **East Baton Rouge Parish School Bd. v. Foster**, 02-2799, pp. 16-17 (La.6/6/03), 851 So.2d 985, 996, *citing* **Caddo-Shreveport Sales And Use Tax Commission v. Office of Motor Vehicles, Dept. of Public Safety and**

---

[1] <u>See, e.g.,</u> **Tin, Inc. v. Washington Parish Sheriff's Office**, 12-2056, p. 14 (La. 3/19/13), 112 So.3d 197, 207 ("[W]hen interpreting a statutory provision, we must presume that the Legislature acts deliberately ….").

4

**Corrections**, 97-2233, p. 6 (La. 4/14/98), 710 So.2d 776, 780, and **Radiofone, Inc. v. City of New Orleans**, 93-0962, p. 6 (La. 1/14/94), 630 So.2d 694, 698.

Under these principles, this court is tasked with examining Section 10(B) for indicators that "sue and be sued" is insufficient to waive immunity for non-tort/non-contract suits. Article XII, § 10(B) provides: "Waiver in Other Suits. The legislature may authorize other suits against the state, a state agency, or a political subdivision. A measure authorizing suit shall waive immunity from suit and liability."[2]

Nothing in the language of Article XII, § 10(B) places any restriction on the legislature's chosen method to waive liability. Returning to the majority's historical narrative, because the constitutional framers drew a distinction between suits for tort/contract and all other suits, it is reasonable to infer that the legislature, if it had so chosen, in turn could have drawn a similar distinction when authorizing suits against the Department of Children and Family Services. As this court long ago noted, "[t]he members of the Legislature are presumed to know the law." **State ex rel. Varnado v. Louisiana Highway Commission**, 177 La. 1, 147 So. 361, 362 (1933). Therefore, instead of designating the Department as "a body corporate with the power to sue and be sued" as indicated in La. R.S. 36:471(A), the legislature

---

[2] The language authorizing the legislature to waive immunity is consistent with Article III, § 35 of the 1921 Constitution as amended by 1960 La. Act 621, which in pertinent part provides:

> The Legislature is empowered to waive, by special or general laws or resolutions, the immunity from suit and from liability of the state, and of parishes, municipalities, political subdivisions, public boards, institutions, departments, commissions, districts, corporations, agencies and authorities and other public or governmental bodies; and each authorization by the Legislature for suit against the State or other such public body, heretofore and hereafter enacted or granted, shall be construed to be and shall be effective and valid for all purposes, as of and from the date thereof, as a waiver of the defendant's immunity both from suit and from liability.

5

could have designated the Department as "a body corporate with the power to sue and be sued" in contract or tort.

By presently failing to give effect to the plain and broad designation of the Department as "a body corporate with the power to sue and be sued," the majority effectively perpetuates a flawed policy. That is, the majority is rightly critical of the line of cases under the former constitution, holding that the legislature's waiver of immunity was a "mere invitation 'to visit the courthouse' to file suit and to be thrown out shortly thereafter on an exception of no cause of action. See **Duree v. Maryland Casualty Co.**, 238 La. 166, 114 So.2d 594 (1959); **Stephens v. Natchitoches School Board**, 238 La. 388, 115 So.2d 793 (1959)." **Canal/Claiborne**, No. 14-0664, slip op. at 10. The **Duree** and **Stephens** cases essentially put litigants in the position of having a right, but no remedy. Similarly, the majority's present refusal to recognize the "sue and be sued" language as a waiver for the plaintiff's quasi-contractual suit contravenes the notion that if a state agency enters a private marketplace, the agency should be held accountable just as a non-governmental entity would be accountable. *Cf.* **Williams v. State, Dept. of Health and Hospitals**, 97-0055, pp. 6-7 (La. 12/2/97), 703 So.2d 579, 583 (commenting on the treatment of sovereign immunity under the current state constitution, this court explained: "the abrogation of sovereign immunity necessitates the application of the law of the land equally to the sovereign and the private litigant.").

To recap this court's historical interpretation of the "sue and be sued" language, this court has already given an expansive meaning to the legislature's use of "sue and be sued" for purposes of waiving governmental immunity. There is no significant difference between the prior constitution, as amended in 1960, and the current constitution that would result in restricting this expansive meaning.

6

The majority's new, restrictive interpretation begs an important question. If, as the majority holds, the language "sue and be sued" provides limited authority to a litigant to recover against the state's Department of Children and Family Services, is it consistent for "sue and be sued" to nevertheless suffice to authorize the Department of Children and Family Services to recover against a litigant? Pursuant to La. R.S. 46:236.1.2, that agency is authorized *inter alia* to obtain child support orders, establish paternity, and obtain medical support orders. Each of those actions is greatly different in character, but none of those actions sounds in contract or tort. It would seem inconsistent to hold that "sue and be sued" is insufficient to enable the agency to litigate a wide range of non-tort/non-contract actions, but "sue and be sued" is not broad enough to waive immunity for non-tort/non-contract actions. The proper aim of this court is to harmonize statutory provisions, not cast them into conflict or doubt. **State v. Louisiana Land and Exploration Co.**, 12-0884, p. 9 (La. 1/30/13), 110 So.3d 1038, 1045 ("It is equally well settled under our rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter.").

Reading the phrase "sue and be sued" to mean that the legislature has authorized and waived immunity for tort, contract, and all other causes of action is supported by a plain reading of that phrase. That meaning harmonizes the agency's statutory duty to file a wide range of non-contract/non-tort suits under La. R.S. 46:236.1.2, with the agency's obligation to be responsible for its actions in the marketplace under the "sue and be sued" provision of La. R.S. 36:471(A). When a cause of action against the agency is not based in contract or tort, the legislature's directive that the agency is enabled to "sue and be sued" encourages the agency to act

7

responsibly only if "sue and be sued" is interpreted to waive immunity for non-tort/non-contract causes of action.

In a related vein, because the decision in **St. John the Baptist Parish v. State ex rel. Dept. of Wildlife and Fisheries**, 02-612 (La.App. 5 Cir. 10/16/02), 828 So.2d 1229, 1230-31, can be interpreted to broadly hold "sue and be sued" language constitutes a general waiver of immunity in an action challenging the Department of Wildlife and Fisheries' ability to enforce its camping regulations (an action which is not grounded in contract or tort), I find that the **St. John the Baptist Parish** court ruled properly. Unlike the majority here, I would not overrule any portion of **St. John the Baptist Parish**.

In conclusion, I respectfully dissent from the majority's ruling, inasmuch as that ruling does not construe the phrase "sue and be sued" as a waiver of immunity to the plaintiff's quasi-contractual claims and redefines that phrase, which this court had previously held was "effective and valid for all purposes," as a waiver of sovereign immunity. See **Hamilton**, *supra* (emphasis added).